604 A.2d 1225

**TOWNSHIP OF LITTLE BRITAIN, Appellant,**

v.

**LANCASTER COUNTY TURF PRODUCTS, INC. and
Lancaster County Products, L.P., Appellees.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1991.

Decided March 5, 1992.

Reargument Denied April 23, 1992.

James H. Thomas, for appellant.

Randall C. Schauer, for appellees.

Before PALLADINO and SMITH, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The Township of Little Britain (Township) appeals from an order of the Court of Common Pleas of Lancaster County which denied its request to preliminarily enjoin Lancaster County Turf Products, Inc. and Lancaster County Turf Products, L.P. (collectively LCTP), pursuant to Section 617 of the Pennsylvania Municipalities Planning Code[1] (MPC) from further engaging in activities which violate its zoning ordinances.

In December of 1990, LCTP began to conduct a spent mushroom soil curing operation[2] on real property it owned located within the Township's agricultural district.[3] On February 7, 1991, the Township's zoning officer issued the following enforcement notice:

[1] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201.

[2] Spent mushroom soil is an organic by-product of growing mushrooms consisting of, but not limited to, peat moss, hay, straw, manure and mushroom remnants. The curing process consists of spreading the mushroom soil to a depth of approximately three feet and exposing it to the elements for twelve to eighteen months, occasionally harrowing or turning the soil so that it may aerate. The soil is eventually reclaimed and sold as potting soil and top dressing.

[3] The location of LCTP's improved property was 190 Balance Martin Road, Peach Bottom, Pennsylvania 17563, Tax Map No. 24N–11–4. The property is classified as A–1 Agricultural pursuant to the Township's zoning ordinance.

A.   Article V–A–1.02 You have begun and are conducting an industrial and commercial use of the premises in violation of the Permitted Uses section.

B.   814 You have constructed a manure storage facility without obtaining a permit from the Zoning Officer.

C.   902.a You have commenced excavation on the property and constructed an earthen mound, excavated at a drainage inlet pipe and constructed a series of streets on the property without a zoning permit for such work.

D.   903.a You have used the premises for commercial storage and spreading of solid waste, hazardous waste, residual waste, mushroom compost and other unidentified material without a Certificate of Use and Occupancy for such use.

E.   904.a You have changed the use of the land and structures at the premises from Agricultural to Commercial and Industrial without first obtaining a permit or a Certificate of Use and Occupancy.

F.   902.9 To the extent the correspondence from the then Township Zoning Officer Marsh dated March 22, 1990 in response to an inquiry dated March 20, 1990 and additional correspondence dated October 3, 1990 from the then Township Zoning Officer Marsh in response to an inquiry dated September 28, 1990 is considered authorization to proceed or a permit (which interpretation is not accepted by the Township) said correspondence and the opinions stated therein are based on false statements and/or misrepresentations by you in the inquiry in that you:

a) failed to disclose the proper identity of the landowner;

b) failed to disclose the fact that solid waste, hazardous waste, residual waste or other unidentified waste would be deposited at the premises;

c) failed to disclose your intent to construct streets on the premises;

d) failed to disclose that the land use was being conducted by an entity other than the legal owner;

e) failed to disclose your plans to construct a manure storage facility;

f) failed to disclose your intent to operate heavy industrial equipment at the premises;

g) failed to disclose your intent to operate a commercial storage facility for compost and other waste;

h) misrepresented the content of the material you intended to store at the premises;

i) otherwise failed to disclose your plans, which plans are just now being discovered.

Despite the enforcement notice, LCTP continued to conduct its spent mushroom soil curing operation on its property.

On March 8, 1991, the Township filed a complaint in equity seeking to enjoin LCTP's operation pursuant to Section 617 of the MPC.[4] On March 15, 1991, upon motion of the Township, the trial court granted an ex parte preliminary injunction enjoining LCTP from further engaging in the conduct of its spent mushroom soil curing operation and a hearing on the continuance of the preliminary injunction was scheduled for March 21, 1991.[5] Following the aforementioned hearing, the trial court issued the following order:

AND NOW, March 25 (sic) 1991, plaintiff's petition for a preliminary injunction is denied, and the ex parte order dated March 15, 1991 is vacated.

Respondent's petition to toll imposition of fines is granted.

.　　.　　.　　.　　.

On June 3, 1991, the Township filed an appeal with this Court from the trial court's order of March 25, 1991.[6]

4. 53 P.S. § 10617.

5. On March 20, 1991, LCTP filed a petition pursuant to 53 P.S. § 10617.2(b) for the tolling of any per diem fines with respect to possible judicial enforcement of the enforcement notice issued by the zoning officer. By agreement of counsel, the petitions to toll the per diem fines and for continuance of the preliminary injunction were consolidated for hearing before the trial court.

6. The trial court also ordered that "[i]n the interests of judicial economy, should an appeal be taken from this order, we hereby

We begin by noting that our scope of review of a ruling upon a request for a preliminary injunction is limited to a determination of whether there were reasonable grounds for such order or whether the rule of law relied upon was palpably erroneous or misapplied. *Boykins v. City of Reading,* 128 Pa.Commonwealth Ct. 154, 562 A.2d 1027 (1989). The Township asserts that the trial court erred in denying its request for a preliminary injunction by applying the criteria set forth in *T.W. Phillips Gas & Oil Co. v. People's Natural Gas Co.,* 89 Pa.Commonwealth Ct. 377, 492 A.2d 776 (1985)[7] rather than the standard of Section 617 of the MPC.

Section 617 of the MPC provides in relevant part as follows:

> In case any building, structure, landscaping or land is, or is proposed to be, erected, constructed, reconstructed, altered, converted, maintained or used in violation of any ordinance enacted under this act or prior enabling laws, the governing body or, with the approval of the governing body, an officer of the municipality, or any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building, structure, landscaping or land, or to prevent, in or about such premises, any act, conduct, business or use constituting a violation. When any such action is instituted by a landowner or

vacate the automatic supersedes provided for in Pa.R.C.P (sic) 1736(b)." The trial court erroneously referred to Pa.R.C.P. instead of the Pa.R.A.P.; however, since neither party questioned the propriety of this portion of the trial court's order, we will not address the issue.

7. A court may grant a preliminary injunction only where the moving party establishes the following elements: 1) the relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages; 2) greater injury will occur from refusing the injunction rather than from granting it; 3) the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct; 4) the alleged wrong is manifest and the injunction is reasonably suited to abate it; and 5) the plaintiff's right to relief is clear. *T.W. Phillips,* 89 Pa.Commonwealth Ct. at 383, 492 A.2d at 780.

tenant, notice of that action shall be served upon the municipality at least 30 days prior to the time the action is begun by serving a copy of the complaint on the governing body of the municipality. No such action may be maintained until such notice has been given.

53 P.S. § 10617.

The Township asserts that, under Section 617, it merely had to show that there was a "violation or proposed violation of some specific provision of the zoning ordinance." *Gateway Motels, Inc. v. Municipality of Monroeville,* 106 Pa.Commonwealth Ct. 42, 525 A.2d 478, *allocatur denied,* 518 Pa. 621, 541 A.2d 748 (1987); *Township of East Bradford v. Champaine,* 26 Pa.Commonwealth Ct. 168, 362 A.2d 1117 (1976). We agree.

The trial court had found that LCTP's operation was in fact a permitted use and thus concluded that there was no *per se* violation of the zoning ordinance. The trial court therefore concluded that the holding in *Gateway* was inapplicable and thereafter applied the criteria set forth in *T.W. Phillips* in making its determination to deny the preliminary injunction.

The Township argues that it had established before the trial court that LCTP had changed the use of the land without first obtaining the necessary permits and certificates as required by the zoning ordinance. Section 904(a) of the zoning ordinance provides as follows:

904   *Enforcement, Penalty, and Remedy*

904.a   The construction, erection, replacement, alteration, repair, extension, displacement, and/or use of any structure, building, sign, and/or land *or the change of use,* area of use, percentage of use or extension or displacement of the use of any structure, building, sign, and/or *land without first obtaining a permit* or the use of any building, structure, sign, and/or land *without receipt of a certificate of use and occupancy* or the failure to comply with any other provisions of this ordinance, *are hereby declared to be violations of this Zoning Ordinance.*

(Emphasis added.)

LCTP concedes that it never applied for nor received a permit incident to a change of use of the land or a certificate of use and occupancy as prescribed under Section 904(a) of the zoning ordinance. Since LCTP admits to not having obtained a permit or a certificate of use and occupancy prior to engaging in its operations, there is *prima facie* evidence of a *per se* violation.

LCTP argues that its operation constitutes a permitted agricultural use under Section A-1.02(6) of the zoning ordinance.[8] The essence of LCTP's argument is that since its operation is arguably a permitted use, it is thereby excused from obtaining the necessary permits and or certificates. Whether LCTP's operation constitutes a permitted use is not the issue on appeal. The Township readily concedes that it is not contesting the fact that LTCP's operation necessarily constitutes an agricultural use. The determinative question remains whether a change of use occurred thus necessitating the need for a permit or certificate of use and occupancy.

Our review of the record reveals that the property in question had previously been used as farms for the raising of crops, chickens, and tree stalks. LCTP then used approximately 15 of the 175 total acres for the spreading of the spent mushroom soil. As part of its present use of the property, LCTP constructed an access road across a portion of the property for the purpose of facilitating the spreading process. The record also reveals that the property is no longer being used to raise chickens or tree stalks. Significantly LCTP concedes, in its brief, that the evidence showed that there may have been a change in use of the land.

8.  Section A-1.02(6) of the zoning ordinance provides that:
    Agricultural business related to the selling of products to be used by farmers solely in the production of crops, horses, cattle, other livestock and poultry, such as: fertilizer, animal feed, medical additives, animal health aids, lime, chemicals used for killing weeds, etc.
    constitutes a permitted agricultural use.

Accordingly, we find that LCTP changed the use of the land without having obtained the necessary permits or certificates of use and occupancy as required by the zoning ordinance. Thus, having determined that the Township sufficiently established a *per se* violation of its zoning ordinance, we hold that the trial court erred by applying the criteria of *T. W. Phillips* rather than the standard of Section 617 of the MPC.

In its brief, LCTP also raised the issue, in the alternative, that regardless of which standard the trial court applied, it was entitled to a variance by estoppel. The trial court, in addition to holding that the Township failed to satisfy the criteria of *T. W. Phillips*, also held in the alternative as follows:

> Finally, there is no evidence of any wrongful conduct by respondents requiring a restoration of the status quo ante; on the contrary, we find that respondents acted in good faith in making several inquiries of township zoning officer before proceeding with their plans, and the zoning officer's assurances of the lawfulness of the proposed operation *would estop the township from now requiring a permit.* (Footnote omitted.) (Emphasis added.)

Accordingly, we will address the issue of equitable estoppel.

LCTP maintains that it had sufficiently satisfied the elements necessary to obtain a variance by estoppel as set forth in *Caporali v. Ward,* 89 Pa.Commonwealth Ct. 621, 493 A.2d 791 (1985) namely that it had established: 1) the Township's failure to enforce the law over a long period of time or some form of active acquiescence by the Township of the illegal use; 2) good faith throughout the proceeding by LCTP; and 3) innocent reliance evidenced by substantial expenditures.

The essence of LCTP's argument is that through a series of letters from the zoning officer, to the effect that LCTP's proposed operation was a permitted use, the Township actively acquiesced in the violation. However, at the hear-

ing before the trial court, Michael Louis Pia of LCTP testified upon cross-examination as follows:

Q. Now, Mr. Marsh, the previous zoning officer, never told you you didn't need a certificate of use and occupancy permit, did he?

A. He did not.

Q Did he ever tell you that you didn't need a permit to construct the street?

A No. I don't recall there being conversations about the access lane.

Q Did he ever tell you that you didn't need a permit to change one land use to another land use.

A No. I don't see any reason for him to tell me that.

Q Did he ever tell you that you did not need a certificate of use and occupancy?

A No, he didn't.

Reproduced Record at 109A.

The record reveals that the Township's zoning officer merely represented to LCTP that its proposed operation was a permitted use. There is no evidence that the zoning officer ever told LCTP that permits or certificates of use and occupancy would not be required. Therefore, LCTP has failed to make a sufficient showing of active acquiescence by the Township or that the Township failed to enforce the law over a long period of time. Accordingly, the order of the trial court is vacated and this matter is remanded with directions to reinstate the preliminary injunction.

## ORDER

AND NOW, this 5th day of March, 1992, the order of the Court of Common Pleas of Lancaster County, dated March 25, 1991, is vacated and remanded with directions to reinstate the preliminary injunction.

Jurisdiction relinquished.

PALLADINO, J., dissents.