**TOWNSHIP OF MIDDLE SMITHFIELD,**
Appellant

v.

**Scott J. KESSLER and Kimberly Nicholson Kessler.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 13, 2005.
Decided Aug. 11, 2005.
Reargument Denied Oct. 3, 2005.

18

Richard E. Deetz, Stroudsburg, for appellant.

James V. Fareri, Stroudsburg, for appellees.

Thomas L. Wenger, Harrisburg, for amicus curiae, Pennsylvania State Association of Township Supervisors.

BEFORE: McGINLEY, J., and LEADBETTER, J., and JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

The Township of Middle Smithfield (Township) appeals from the order of the Court of Common Pleas of Monroe County (common pleas) denying the Township's request for a preliminary injunction prohibiting Scott and Kimberly Kessler from continuing to operate their gas station without obtaining a final occupancy permit from the Township. We reverse.

In 1988, the Kesslers first opened their gas station on their 3.6–acre lot on Route 209. In September of 2001, they sought conditional use approval to add a convenience store to the uses and structures then existing on the site, consisting of the gas station, a car wash building and a building from which they sold used cars. On February 26, 2002, the Township granted a conditional use approval conditioned, in pertinent part, as follows:

1. The applicant shall present a land development plan and obtain approval for the same for all the proposed uses on the property in full compliance with all requirements of the Middle Smithfield Township Subdivision and Land Development Ordinance.

2. The applicant shall obtain and present to the Township copies of all Penn-DOT Highway Occupancy Permits for all driveways accessing the said proposed development.

3. The arrangement of the driveways shall be in compliance with requirements of the Pennsylvania Department of Transportation. The installation and maintenance of any improvements required by the Pennsylvania Department of Transportation shall be the sole responsibility of the developer.

. . . .

12. The applicant shall obtain a Penn-DOT Highway Occupancy Permit prior to the review of the Board of Supervisors of his land development plan.

In accord with these requirements, in March of 2002, the Kesslers applied to the Department of Transportation (DOT) for a highway occupancy permit and, in June of 2003, submitted to the Township a land development plan.

In association with their application for a highway occupancy permit, the Kesslers submitted to DOT a plan depicting the closure of existing driveways, the proposed new driveway locations and pavement and line marking changes in the highway right of way. Specifically as to the pavement changes, the plan shows that the existing 24–foot cartway (in a 50–foot right of way), consisting of a single lane for travel in each direction, will be enlarged to create a middle/third lane intended to accommodate vehicles preparing to turn into the gas station and the roadway markings will be repainted accordingly. Based upon the application and plan, DOT issued a highway occupancy permit on March 26, 2002.

In their land development plan, the Kesslers do not show the cartway improvements depicted in the plan submitted to DOT but the plan contains a "general note," as required under Section 170–152F(3) of the Township's Subdivision and Land Development Ordinance,[1] stating: "An approved and completed highway oc-

cupancy permit shall be required prior to occupancy and/or use." The Township approved the land development plan on September 9, 2003. Following this preliminary conditional plan approval, the Kesslers elected to proceed with construction without providing the Township with the financial security necessary to obtain final plan approval under Section 509 of the Municipalities Planning Code.[2]

Prior to beginning construction, the Kesslers applied for a building and zoning permit as required under the Township's zoning ordinance. Based upon the advice of the Township solicitor, on November 25, 2003, the zoning officer issued the building and zoning permit subject to special conditions specified by the solicitor. The conditions attached to the permit state:

*The following are conditions that shall be met prior to a Certificate of Occupancy:*

1. That the permits are pursuant to preliminary land development plan approval for the above project.

2. That the applicant shall entirely close the existing gas station and car wash businesses upon the commencement of construction of the new project, and shall not re-open either the gas station or car wash business until a certificate of occupancy for the new project has been obtained.

3. That improvements must be entirely completed, and approved by the Town-

---

1. Section 170–152F of the Subdivision and Land development Ordinance states:

     Required general notes for all land development plans. The following general notes shall be labeled on all land development plans:

     . . . .

     (3) In the event that the plan will require access to a highway under the jurisdiction of the Pennsylvania Department of Transportation, the following: "An approved and

completed highway occupancy permit shall be required prior to occupancy and/or use."

2. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10509. In general, Section 509 provides that a land development plan shall not be finally approved unless requisite improvements have been made but in lieu thereof the developer may deposit with the municipality financial security sufficient to cover the cost of the requisite improvements.

ship Engineer, pursuant to the land development plan preliminary approval, prior to receiving final land development plan approval and a final certificate of occupancy.

4. That the new project shall not be occupied and opened for business until obtaining a certificate of occupancy.

5. Labor and Industry certifications.

Certified Record, Joint Exh. F. Following the issuance of this permit, the Kesslers closed their businesses and commenced construction. Because construction began later than contemplated in the originally issued highway occupancy permit, which authorized a start date of March 26, 2002 and required completion no later than March 26, 2003, the Kesslers requested and DOT granted several extensions, first until September 26, 2003 and second until September 26, 2004.

By June of 2004, the Kesslers considered construction of the new building and driveways sufficiently completed to allow operation of their businesses and, despite having not yet completed the improvements to Route 209, they sought permission from DOT to use the driveways for access to the road, promising to complete the roadwork by September 26, 2004. An employee at DOT advised the Kesslers' attorney that DOT did not oppose the Kesslers' use of the driveways for road access prior to completing the balance of the roadwork. In addition, DOT granted yet a third extension on the highway occupancy permit to allow completion of the roadway work on or before March 26, 2005. Based upon DOT's lack of opposition to opening the businesses, the Kesslers sought final "as built" land development approval and the issuance of a certificate of occupancy. The Township denied the Kesslers' request on the ground that they had not completed the improvements to Route 209. Despite the Township's denial, the Kesslers opened their gas station for business.

On September 29, 2004, the Kesslers commenced a mandamus action, requesting that common pleas enter a judgment commanding the Township to issue a final approval of their as-built expansion, issue an occupancy permit, and award costs, damages and attorney's fees. On October 4, 2004, the Township commenced an action in equity requesting that common pleas enjoin the Kesslers from continuing to operate their gas station in violation of the Township's zoning ordinance. The Township also filed a petition for a preliminary injunction. Common pleas consolidated these actions and convened a hearing on October 29, 2004. After the hearing, common pleas denied the Township's request for a preliminary injunction based upon *Bethel Park Minimall, Inc. v. Borough of Bethel Park,* 16 Pa.Cmwlth. 97, 326 A.2d 670 (1974), where this court held that a municipality could not base its conditional approval of a site plan on a traffic plan that DOT had not approved.[3] Common pleas relied particularly on our court's statement, in *Bethel Park,* as follows:

A state highway is involved in this case and Section 420 of the State Highway Law, Act of June 1, 1945, P.L. 1242, as amended, 36 P.S. § 670–420, makes it clear that the Secretary of Highways is the authority empowered to control the direction of traffic on all state highways. Ultimately, the question of whether patrons of the Minimall Shopping Center will be permitted to make turns or required to stop for traffic signals will be

**3.** In a separate order, common pleas denied the Kesslers' motion for peremptory judgment in mandamus. The present appeal is only from the denial of preliminary injunctive relief, which is an interlocutory order appealable as of right under Pa.R.A.P. 311(a)(4).

controlled by the Secretary of Highways and not by Bethel Park.

*Id.* at 672. After quoting the above as dispositive and without additional discussion, common pleas opined:

> Since PennDOT has extended the existing Highway Occupancy Permit through March 26, 2005, the Township is not entitled to equitable relief to preclude the landowner's use of his premises so long as a valid Highway Occupancy Permit is in effect. On the other hand, the landowners are not entitled to a final occupancy permit until such time as they complete the PennDOT requirements for improvements to Route 209. Therefore, at this stage of the proceedings, we must deny the relief requested by both parties.

*Kessler v. Kulik,* (Nos. 8064 and 8228 Civil 2004, filed November 22, 2004), op. at 4. On appeal, the Township asserts error in common pleas' conclusion that, while completion of roadway improvements is a prerequisite to the issuance of a certificate of occupancy, the Township nevertheless cannot prohibit the Kesslers from opening their business prior to completion of the improvements.

In general, we apply a highly deferential standard of review to the grant or denial of a preliminary injunction, asking whether " 'any apparently reasonable grounds' support the trial court's disposition." *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 645–46, 828 A.2d 995, 1000 (2003). Howeverer where, as here, the court rested its decision solely on its interpretation of a question of law, we exercise plenary review over that interpretation, and need not attempt to speculate whether other equitable considerations might have supported the same result.[4] The Township is entitled to an injunction prohibiting the Kesslers' continued operation of their business if that business activity violates the zoning ordinance. See Section 617 of the Municipalities Planning Code, *as amended,* 53 P.S. § 10617.[5] *See also Township of Little Britain v. Lancaster County Turf Prod., Inc.,* 146 Pa.Cmwlth. 211, 604 A.2d 1225 (1992) (stating that failure to obtain a certificate of occupancy as required under zoning ordinance is a violation per se entitling the municipality to a preliminary injunction).[6] We conclude that the Kesslers violated the zoning ordinance when they opened for business without first obtaining a certificate of occupancy.

The Township's zoning ordinance renders it "unlawful to use and/or occupy any new principal building or establish any new or replacement principal non-residential use until a certificate of use and occupancy for such building or use has been issued." Middle Smithfield Zoning Ordinance, Section 103.A3a. The ordinance further provides that the certificate "shall only be issued by the Zoning Officer if [she] determines that the activity complies with this ordinance ... [and] there is compliance with other Township ordinances." Zoning Ordinance, Section 103.A3c. As we previously recognized, since the Kesslers' property must access a highway under

---

4. Of course, since we may affirm on grounds other than that relied upon by the trial court, we may do so where such equitable grounds are manifest in the record.

5. Act of July 31, 1968, P.L. 805.

6. In *Township of Britain v. Lancaster County Turf Products, Inc.,* 146 Pa.Cmwlth. 211, 604 A.2d 1225 (1992), our court held that the standard for deciding a motion for a preliminary injunction to enforce a zoning ordinance is that set forth in Section 617 of the Municipalities Planning Code rather than the traditional four part test set forth in *T.W. Phillips Gas & Oil Co. v. People's Natural Gas Co.,* 89 Pa.Cmwlth. 377, 492 A.2d 776 (1985).

DOT's jurisdiction, the Township's Subdivision and Land Development Ordinance (SLDO) requires that the land development plan contain a note indicating that the landowner must obtain an *approved and completed* highway occupancy permit prior to occupancy or use of the site. SLDO, Section 170–152F(3). As required, the Kesslers' preliminary land development plan contained this note, which effectively became an element of the plan and, thereby, made completion (or bonding) of the work authorized by the highway occupancy permit a prerequisite to final plan approval. Finally, when the Township issued the Kesslers a building and zoning permit, it specifically conditioned the permit upon the completion of improvements required under the preliminary land development plan and reiterated that, prior to use or occupancy, the Kesslers must obtain a certificate. The zoning ordinance requirement and the building and zoning permit conditions establish that the Kesslers could not open their business without a certificate of occupancy.

■ Common pleas perceived the question in this case to be whether the Township or DOT ultimately has the authority to control access to a state highway.[7] The issue, more accurately stated, is whether DOT, by acquiescing in the Kesslers' use of their driveways prior to completion of the roadwork, can authorize the resumption of business operations prior to the Township's issuance of a certificate of occupancy. We conclude that DOT cannot override, in this manner, the Township's authority to enforce its zoning ordinance, land development regulations and conditions of land development approval.

---

7. Common pleas accurately stated that a municipality may not condition its approval of a land development plan on limitations regarding access to and traffic patterns on state highways where standards were not already contained in its land development regulations. In *Bethel Park Minimall v. Borough of Bethel Park*, 16 Pa.Cmwlth. 97, 326 A.2d 670 (1974), our court ruled that the borough could not condition site plan approval on traffic restrictions that were solely within DOT's authority to impose. In *Montgomery Township v. Franchise Realty Interstate Corp.*, 54 Pa.Cmwlth. 535, 422 A.2d 897 (1980), our court held that the township could not condition land development approval on a restriction requiring that all vehicles leaving the development by a particular road turn right because no provision regulating traffic was contained in their land development ordinance. *Id.* at 899. Our court reaffirmed this principle in *Ice v. Cross Roads Borough*, 694 A.2d 401 (Pa. Cmwlth.1997), stating that "if a municipality has no ordinances that in any way regulate access to roads within its boundaries, then [DOT's] permit alone would be enough to permit access to state highways. However, if a municipality has ordinances [regulating road access] ... then a landowner seeking access to a state highway must be given permission for this access by both governmental entities. If either entity has a legitimate basis for denial, then the access cannot be granted." *Id.* at 404. In *Ice*, the borough's ordinance provided that "[s]ubdivisions shall be designed to eliminate driveways, where possible, abutting state highway routes." *Id.* at 405. Thus, because the borough had a subdivision ordinance specifically regulating road access, the court held that the borough could prohibit landowners from using their driveway in violation of that ordinance, even though they had a valid DOT permit. *Id.* at 404. *See also Shelbourne Square Assocs., L.P., v. Bd. of Supervisors of Twp. of Exeter*, 794 A.2d 946 (Pa.Cmwlth.2002) (holding that where subdivision ordinance proscribed access to arterial or collector streets, township could deny approval of a plan proposing such access, even though developer had obtained a highway permit from DOT to access the arterial street). However, these cases have no application in the present case, which does not concern control over traffic movements onto or within the state highway right of way. The Township and DOT concur that access to the Kessler property shall be via driveways onto Route 209. The present case concerns the Township's authority to insist, where DOT does not, on completion of the improvements to the roadway prior to allowing the Kesslers to open for business.

DOT's authority to regulate the Kesslers' driveway locations and roadwork associated with their land development arises under Section 420 of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. § 670–420. Pursuant thereto, the secretary of the department is empowered to make reasonable rules and regulations governing the use of state highways and may issue permits for the opening of streets and driveways and for the opening and occupancy of state highways on terms and conditions established in department regulations. Section 420(a) and (b), 36 P.S. § 670–420(a) and (b). The regulations at 67 Pa.Code § 441.3(a) provide that no driveway or structure shall be constructed or altered within a state highway right of way without first obtaining a highway occupancy permit. However, 67 Pa.Code § 441.2(b) provides that the issuance of this permit "does not relieve the permittee from any additional responsibility to secure other ... local approvals or permits as may be required by law." The regulations further provide, in pertinent part, that the permit authorizes the applicant to proceed with the work and serves as a receipt for the application fees; if authorized work is not completed by the date specified on the permit an extension may be granted upon request; and, upon completion of the work, the permittee shall notify the department by mailing the self addressed post card which accompanies the permit to the district office. 67 Pa. Code § 441.5(a), (g) and (h). Further, on the face of the permit there appears a blocked space labeled "Acknowledgement of Completion" containing a signature and date line. Under its regulations, DOT exercises authority over the "location, design, construction, maintenance and drainage of access driveways, local roads, and other property within State highway right-of-way for the purpose of security, economy of maintenance, preservation of proper drainage and safe and reasonable access." 67 Pa.Code § 441.2(a). Although DOT must approve the satisfactory completion of the roadwork authorized by its permit, the regulations confer no authority upon DOT to permit a landowner to open and operate a new land use without final *municipal* approval of the associated land development and issuance of the required certificate of occupancy.

In addition, the sequence of required steps in this land development process inform our understanding as to what the Township demands in requiring an "approved and completed" highway occupancy permit, and causes us to reject the Kesslers' contention that they satisfied the Township's requirement by merely obtaining the permit which allowed them to initiate the roadwork. The conditional use approval for the development required the Kesslers to obtain a "highway occupancy permit" before the Township would review their land development plan. The Kesslers applied for and received such a permit in 2002 and then, in 2003, submitted their land development plan which referenced "an approved and completed highway occupancy permit" as prerequisite to occupancy and use. Aside from the fact that we attribute meaning to the addition of the term "approved and completed," this provision and the corresponding SLDO requirement would be meaningless if they required no more than that the permit be obtained before the plan was filed. Thus, we conclude that in order to satisfy the SLDO requirement and comply with the plan notation, the Kesslers must present a permit from which they have removed and mailed the notification of completion and on which the "Acknowledgment of Completion" block on the face of the permit has been signed and dated by a DOT representative. There is no dispute that the Kesslers have not completed the roadwork.

Rather than a completed highway occupancy permit, they have presented the Township with DOT approved extensions on the time for completion.

The Kesslers may not continue to operate their business without a certificate of occupancy, which is a prerequisite to opening the business under both the zoning ordinance and the conditions attached to the building and zoning permit. Issuance of the certificate of occupancy requires completion of the roadwork pursuant to the notation on the land development plan, requiring a completed highway occupancy permit prior to occupancy or use. The Kesslers admittedly opened for business without first completing the roadwork and obtaining a certificate of occupancy. Hence, they are using their property to operate the business in violation of the zoning ordinance. Common pleas erred in refusing to enjoin that use.

Accordingly, we reverse the denial of preliminary injunctive relief.

### ORDER

AND NOW, this 11th day of August, 2005, the order of the Court of Common Pleas of Monroe County denying the Township's petition for a preliminary injunction in the above-captioned matter is hereby REVERSED and this matter is REMANDED for the entry of a preliminary injunction consistent with the foregoing opinion.

Jurisdiction is relinquished.