J-S21003-19

2019 PA Super 200

| DOUGLAS MATENKOSKI AND SHIU MATENKOSKI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellees | |
| v. | |
| JOSEPH GREER AND VICTORIA GREER | |
| Appellants | No. 2607 EDA 2018 |

Appeal from the Order Entered August 7, 2018
In the Court of Common Pleas of Chester County
Civil Division at No: 2016-00619

BEFORE: STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

OPINION BY STABILE, J.: **FILED JUNE 25, 2019**

In this nuisance action, Appellants, Joseph Greer and Victoria Greer, appeal from a decision[1] granting a preliminary injunction against them and in favor of their neighbors, Appellees Douglas and Shiu Matenkoski, and declining Appellants' counterclaim for injunctive relief. Pursuant to Pa.R.A.P. 311(a)(4)(ii), we exercise jurisdiction over this appeal to the extent it concerns the grant of injunctive relief to Appellees, but we quash this appeal to the extent it concerns the denial of injunctive relief to Appellants. On the merits, we affirm the grant of the preliminary injunction to Appellees.

The evidence demonstrates that Appellants violated local zoning ordinances by operating a noisy and malodorous automobile repair business

---

[1] Although the trial court called its determination a "verdict," the correct term in a civil bench trial is a "decision." Pa.R.C.P. 1038(b), (c). We will refer to the trial court's determination as a "decision."

on nights and weekends on their residential property. Through this conduct, Appellants intentionally interfered with Appellees' quiet enjoyment of their residence.

Since 1990, Appellees have lived in an R-2 Residential District in East Nottingham Township. In 2011, Appellants moved into the residence next door to Appellees. Appellants constructed a two-car garage one foot from Appellees' property line next to an existing two-car garage on Appellants' land. Appellants started a business restoring and repairing automobiles on weeknights and weekends. The repair and restoration work was very noisy. Appellants also left vehicles idling in front of their garages, creating additional noise and noxious fumes. Appellees frequently complained to Appellants and township officials about the noise and fumes. Appellees used handheld cameras to make audiovisual recordings of Appellants' repair work. In response, Appellant Joseph Greer cursed at Appellees, made obscene gestures, and used a handheld camera to record Appellees' activities.

In 2016, five years after Appellants began their repair business, Appellees filed a civil action against Appellants alleging nuisance, intentional infliction of emotional distress, and trespass. Appellants filed six counterclaims, including invasion of privacy (intrusion upon seclusion), private nuisance, intentional infliction of emotional distress, violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act (18 Pa.C.S.A. §§ 5701-5728) ("Wiretap Act"), injunction and trespass.

On August 7, 2018, following a three-day bench trial, the trial court granted a preliminary injunction[2] prohibiting Appellants "from carrying on automobile repairs and restorations in this R-2 residential district both as a violation of the East Nottingham Township Zoning Ordinance and as a nuisance." Decision, 8/7/18, at 1. The court further prohibited Appellants

> from [using] grinders, sanders, compressors, spray paint tools, solvents, or other tools or items associated with the repair of automobiles or other vehicles unless those vehicles are titled in their name and used as their personal vehicles. In such circumstances, [Appellants] may work on their personal titled vehicles between the hours of 8 a.m. and 6 p.m.

*Id.* The court held in favor of Appellees in their actions for nuisance and intentional infliction of emotional distress but declined to award damages. *Id.* at 2. Finally, the court ruled against Appellees on their claim of trespass and against Appellants on their counterclaims for injunctive relief and damages. *Id.*

> With regard to the preliminary injunction, the court stated:
>
> The [c]ourt credits [Appellees'] testimony and evidence introduced while finding [Appellants'] testimony not to be credible . . . [Appellant] Joseph Greer, and to a lesser extent Victoria Greer, have used foul and demeaning language and conduct, obscene hand gestures and engaged in other conduct not only intended to create a nuisance but to inflict emotional distress on [Appellees], and in particular upon Shiu Matenkoski. [Appellant] Joseph Greer clearly is engaging in the business of automobile repair and sales from his personal residence, having sold seventeen (17) vehicles over the last four (4) years, at least seven

---

[2] Appellants state erroneously that the trial court entered a permanent injunction. The decision reflects that the court entered a preliminary injunction.

(7) of which were not titled to either [Appellant]. The work on these vehicles takes place on [Appellants'] R-2 residential district property, mainly outside of any structure, and cannot be considered a major or non-impact home occupation or permitted automobile sales/service use under the East Nottingham Ordinances. Repairs and work on these vehicles occur at unreasonable hours, often at times past 10 p.m. There are times when [Appellants] play loud music, especially during the weekends, while other individuals, not related to the Greer family, either work on vehicles located on [Appellants'] property or support the automobile repair business activity occurring thereon. [Appellant] Joseph Greer often idles his work vehicle for hours in the morning creating a malodorous condition in [Appellees'] residence, for no valid reason. [Appellants'] use of solvents, paints or other chemicals associated with automobile restoration and repair further contribute to the malodorous conditions suffered by [Appellees] while on their property. The odors and noise from [Appellants'] property constitute a continuing nuisance to [Appellees], thus also entitling them to injunctive relief. [Appellees] have lived in their residence for twenty-nine (29) years. The record reflects that the conditions [Appellees] now complain about began with the purchase of [Appellants'] property in 2010 and have generally increased since that time.

Decision, 8/17/18, at 1 n.2.

On September 5, 2018, without filing post-trial motions or reducing the decision to judgment, Appellants appealed to this Court. Both Appellants and the trial court complied with Pa.R.A.P. 1925(b). In its Rule 1925 opinion, the court elaborated on its decision to issue preliminary injunctive relief as follows:

[Appellants] complain that the injunction issued is overly broad as set forth in paragraphs A and B of their Concise Statement. The [c]ourt does not agree. [Appellants] are only prohibited from using tools associated with the repair of automobiles or other vehicles unless those vehicles are titled in their name or used as their personal vehicles. This restriction was placed upon [Appellants] because it is clear from the record that [Appellants], and in particular, Joseph Greer, was engaged in the business of repairing and selling automobiles and automobile parts, with [Appellants] confirming that he sold seventeen (17) vehicles over

the last four (4) years from his residence and at least seven (7) of them were not titled in [Appellants'] names. [Appellees] were afforded no enforcement protection from this obvious commercial activity in a residential area from East Nottingham Township after registering complaints. *See* Trial Ex. P4; 53 P.S. § 10617. [Appellees] did not receive any help from local police. Although the [c]ourt made no specific finding in its verdict, it is noted that a friend of [Appellant] Joseph Greer was at all times relevant herein, a Pennsylvania State Trooper who would assist [Appellants] in repairing automobiles and also used [Appellants'] property to fix his own automobile.[3] In order to get relief from [Appellants'] egregious conduct, [Appellees] resorted to taking videos of the [Appellants'] abuses, which included audio recordings of the excessive auto repair noises coming from the property, and their filing a civil lawsuit. [Appellants'] activities would occur very late into the evenings, often past 10 p.m. The reason for enjoining the work hours on personal vehicles between the hours of [6 p.m. to 8 a.m.] is because of the appearance and testimony of [Appellant], Joseph Greer, who appears to be the type of person who will not accept restriction on his conduct and believes in "his" exclusive rights as an American. When [Appellees] would attempt to discuss with Mr. Greer the excessive noise and odor issues, Mr. Greer would curse at them, extend his middle finger to them, or defiantly state "this is America and I can do what I want with my property." He would then put up a large American flag to attempt to visually block out the commercial activity occurring on his driveway that could be viewed by the [Appellees]. It should be noted that [Appellee], Shiu Matenkoski, was born in Taiwan, speaks broken English, and it was she who primarily complained to [Appellants] regarding their activities. [Appellees] have lived in their residence for 29 years. It is unclear to the trial court why Mrs. Matenkoski needed to be reminded what country she has been living in for over 30 years. [Appellees] have only experienced the noise, fumes and auto repair business intrusions into their property since [Appellants] purchased their property in 2010. [Appellant] Joseph Greer appears xenophobic. Along with engaging in his automobile repair and sales business,

---

[3] Through this text, the trial court noted its concern that the police abdicated its duty to protect Appellees from Appellants' lengthy pattern of misconduct. We share the trial court's concern, and we find it troubling that East Nottingham Township provided no enforcement protection to Appellees for Appellants' violation of its ordinances.

he would idle his work truck excessively for hours starting at 5 a.m., set off car alarms at inconvenient hours, and shine laser beams into the [Appellees'] residence at night. In addition, [Appellants], along with their auto enthusiast male friends, would party and listen to music in [Appellants'] detached garage and then walk around the side of the garage, observable from [Appellees'] residence, and urinate on the ground. The hours of 8 a.m. to 6 p.m. allows [Appellants] sufficient time on weekends to work on their personal automobiles, if necessary, especially since Mr. Greer works during the day during the week.

Trial Court Opinion, 12/28/18, at 1-3.

Appellants raise the following questions in their appellate brief:

I. Did the trial court err as a matter of law in granting an injunction against Appellants, on the grounds that:

A. The injunction is overly broad in encompassing legal activity not contemplated as nuisances or violations of local ordinances, vague for not narrowly defining enjoined activities, and unreasonably restrictive as to time;

B. Appellees violated Pennsylvania's [Wiretap Act], thus having unclean hands and not warranting equitable relief;

C. The basis for the injunction was Appellants' alleged violation of an East Nottingham Township Zoning Ordinance prohibiting the operation of business, yet as a matter of law Appellants were not involved in any business; and

D. The injunction is overly broad in enjoining activities as nuisances where such activities could not legally constitute the basis for a finding of a private nuisance.

II. Did the trial court err as a matter of law in not finding for Appellant[s] on their claim that Appellees violated the Wiretapping and Electronic Surveillance Control Act, granting Appellant injunctive relief and denying Appellees equitable relief, where Appellees captured audio recordings of Appellant and his guests,

without his permission, while Appellant was in his attached and detached garages and otherwise in the curtilage of his home?

III. Did the trial court err as a matter of law in not granting injunctive relief for Appellant[s] to abate Appellees' continued violations of the Wiretapping and Electronic Surveillance Control Act?

Appellants' Brief at 6-8. Phrased more concisely, Appellants object to the preliminary injunction against them on three grounds: (1) their business is legal under local zoning ordinances; (2) the injunction is overbroad; and (3) Appellees have violated the Wiretap Act and have come into court with unclean hands. Finally, Appellants object to the denial of injunctive relief in their own counterclaim against Appellees under the Wiretap Act. In each argument, Appellants object to the award of injunctive relief to Appellees or the denial of preliminary injunctive relief to themselves. None of Appellants' arguments concerns the trial court's rulings on damages.

At the outset, we consider *sua sponte* whether we have jurisdiction over this appeal. ***Turner Const. v. Plumbers Local 690***, 130 A.3d 47, 63 (Pa. Super. 2015) ("[W]e can raise the issue of jurisdiction *sua sponte*"). The trial court's decision is not appealable as a final order under Pa.R.A.P. 341[4] because it has never been reduced to judgment. ***Crystal Lake Camps v. Alford***, 923

_____

[4] Pa.R.A.P. 341 provides that a final order is an order that "disposes of all claims and of all parties" or is entered by the trial court as a final order "as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case." Pa.R.A.P. 341(b), (c).

A.2d 482, 488 (Pa. Super. 2007) (decision in non-jury trial did not become final for purposes of appeal until properly reduced to and entered as formal judgment under Pa.R.C.P. 227.4).

This decision is, however, an appealable interlocutory order under Pa.R.A.P. 311, which provides in relevant part:

> An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from . . .
>
>> (4) An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered . . .
>>
>> (ii) After a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

Pa.R.A.P. 311(a)(4). While Rule 311(a)(4) provides that preliminary injunctions entered after trial but before a final order generally are not appealable, it has several important exceptions, one of which is relevant here: an order is immediately appealable when it "enjoins conduct previously permitted" and is "effective before entry of the final order." Pa.R.A.P. 311(a)(4)(ii).

The present decision fits within this exception to the extent the trial court granted preliminary injunctive relief to Appellees. Prior to this decision, there was no order in this case enjoining Appellants' conduct. Thus, the trial court enjoined conduct "previously permitted," namely Appellants' operation

of an automobile repair and restoration business on their residential property. *Id.* In addition, the decision was "effective before entry of the final order," *id.*, because it was effective immediately.[5] Accordingly, we exercise jurisdiction over this appeal to the extent it concerns the trial court's grant of preliminary injunctive relief to Appellees. As a practical matter, this means we will review Appellants' first three issues on the merits.

On the other hand, the denial of Appellants' counterclaim for injunctive relief does not fit within Rule 311(a)(4)(ii), because (1) denial of relief took place "after . . . trial but before entry of the final order"; (2) the court did not enjoin conduct of Appellees that was previously permitted or mandated; and (3) the court did not permit or mandate conduct of Appellees that was not previously mandated or permitted. *Id.* Therefore, we quash this appeal to the extent it concerns the trial court's denial of injunctive relief to Appellants, and we will not review their fourth and final argument objecting to the denial of their counterclaim for injunctive relief.

We review orders granting preliminary injunctions for abuse of discretion. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003). "We do not inquire into the merits of the controversy, but only examine the record to determine if there were any

---

[5] Appellants did not file post-trial motions, as such motions are not a prerequisite for a Rule 311 appeal. *Nevyas v. Morgan*, 921 A.2d 8, 13 (Pa. Super. 2007).

apparently reasonable grounds for the action of the court below." *Id.* "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." *Id.* The trial court has "apparently reasonable" grounds to grant a preliminary injunction when the moving party meets six prerequisites: (1) an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) greater injury would result from refusing an injunction than from granting it, and, concomitantly, issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the moving party is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) an injunction will not harm the public interest. *Id.* at 1001.

Appellants first argue that their business is legal under local zoning ordinances. The legal framework for the trial court's ruling incorporates the Pennsylvania Municipalities Planning Code ("MPC") and the East Nottingham Township Zoning Code ("Township Code"). The MPC provides that

> zoning ordinances shall permit no-impact home-based businesses in all residential zones of the municipality as a use permitted by right, except that such permission shall not supersede any deed restriction, covenant or agreement restricting the use of land nor any master deed, bylaw or other document applicable to a common interest ownership community.

53 P.S. § 10603(l).  In accord with Section 10603(l), the Township Code defines "home occupation, no-impact" as a "use that is customarily accessory to, and carried on within, a dwelling unit by one or more residents of such dwelling unit in accordance with the standards of this Chapter."  East Nottingham Zoning Ordinance § 27-202.  The same ordinance requires that such use "be clearly secondary to the principal residential use" and "meet the standards for a 'no-impact home business' contained in the [MPC]."  *Id.*  In turn, the MPC defines "no-impact home-based business" as

> a business or commercial activity administered or conducted as an accessory use which is clearly secondary to the use as a residential dwelling and which involves no customer, client or patient traffic, whether vehicular or pedestrian, pickup, delivery or removal functions to or from the premises, in excess of those normally associated with residential use.  The business or commercial activity must satisfy the following requirements:
>
> (1) The business activity **shall be compatible with the residential use of the property and surrounding residential uses.**
>
> (2) The business shall employ no employees other than family members residing in the dwelling.
>
> (3) There shall be no display or sale of retail goods and no stockpiling or inventory of a substantial nature.
>
> (4) There shall be no outside appearance of a business use, including, but not limited to, parking, signs or lights.
>
> (5) The business activity **may not use any equipment or process which creates noise, vibration, glare, fumes, odors** or electrical or electronic interference, including interference with radio or television reception, which is detectable in the neighborhood.

(6) The business activity may not generate any solid waste or sewage discharge in volume or type which is not normally associated with residential use in the neighborhood.

(7) **The business activity shall be conducted only within the dwelling** and may not occupy more than 25% of the habitable floor area.

(8) The business may not involve any illegal activity.

53 P.S. § 10107(a) (emphasis added).

The trial court found that Appellants' automobile repair and restoration business was not a "no-impact home based business" because it was "obvious[ly] commercial" as well as noisy and malodorous. Decision, at 2; Trial Ct. Op., at 2. The record supports these findings. As the trial court detailed, Appellants sold seventeen vehicles in a four-year period, at least seven of which were not titled to either Appellant, from the business they operated on their residential property. The business was extremely noisy and generated noxious odors, making it wholly incompatible with the property's residential status and surrounding residential uses. When Appellees complained to Appellants, Appellant Joseph Greer responded boorishly by cursing, blocking Appellants' view with an American flag, and proclaiming that "this is America and I can do what I want with my property." Greer is correct to the extent this certainly is America. What Greer fails to grasp is that in America, and in particular, for our present purposes here in Pennsylvania, his fellow citizens have the same rights that he does. Freedom does not give him an excuse to trample on his neighbors' rights and brush aside their objections

with his middle finger. Such conduct is an insult to the flag that he uses to block Appellees' view of his driveway.

We conclude that Appellants' business violated the Township Code's definition of "home occupation, no-impact" by running afoul of subsections (1), (5) and (7) of Section 10107(a) of the MPC. Preliminary injunctive relief was necessary to prevent Appellants from continuing to violate a Township zoning ordinance. **Township of Little Britain v. Lancaster County Turf Prod., Inc.**, 604 A.2d 1225, 1228-29 (Pa. Cmwlth. 1992)[6] (reinstating preliminary injunction in favor of township against property owner due to owner's violation of zoning ordinance); **see also DiMattia v. Zoning Hearing Board of East Whiteland Township**, 168 A.3d 393, 398 (Pa. Cmwlth. 2017) (zoning board properly prohibited property owners from using residential property to build and maintain race cars, because such use was not clearly incidental to and customarily found in connection with the primary residential use of the property; race car work was regular daily activity more analogous to vehicle repair shop in its intensity than to homeowner working on his own vehicle in his garage or mere storage of vehicles); **Page v. Zoning Hearing Board of Walker Township**, 471 A.2d 1348, 1350 (Pa. Cmwlth. 1984) (homeowner could not conduct small motor vehicle repair business in

---

[6] Decisions of the Commonwealth Court are not binding upon this Court but may serve as persuasive authority. **Carmen Enterprises, Inc. v. Murpenter LLC**, 185 A.3d 380, 393 n.2 (Pa. Super. 2018).

detached garage in residential dwelling; such businesses are not within category of pursuits customarily conducted on residential premises).

Next, Appellants argue that the preliminary injunction's directives about the tools that Appellants cannot use and the time Appellants cannot work on repairing or restoring automobiles (6 p.m. to 8 a.m.) are overbroad. We disagree.

Where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury. *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1167 (Pa. 1977). An injunction "should be as definite, clear, and precise in its terms as possible, so that there may be no reason or excuse for misunderstanding or disobeying it." *George F. Mayer and Sons v. Com, Dpt. Of Environmental Resources, Philadelphia Strike Force*, 334 A.2d 313, 315 (Pa. Cmwlth. 1975). "When practicable," an injunction "should plainly indicate to the defendant all of the acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ." *Id.*

Here, the court enjoined Appellants from using "grinders, sanders, compressors, solvents, spray paint tools or other tools or items associated with the repair of automobiles or other vehicles unless those vehicles are titled in their name and used as their personal vehicles." Decision, at 1. Appellants complain that "tools or items associated with the repair of automobiles of other

vehicles" is too broad because it covers tools that are not noisy and noisy tools that Appellants use for legal purposes other than for automotive work. We see no reason to revise this language, because **any** tools are permissible under the preliminary injunction **so long as** Appellants limit their use to the hours of 8 a.m. to 6 p.m. and to vehicles titled in Appellants' name that serve as Appellants' personal vehicles.

Equally reasonable is the injunction's time restriction enjoining work between 6 p.m. and 8 a.m. Appellant Greer works on vehicles at unreasonable hours, often past 10:00 p.m. He also often idles his van and other vehicles early in the morning. The noise and odors continue deep into the night and substantially interfere with Appellees' use of their own property. Merely because Greer found it convenient to work on automobiles on nights and weekends does not entitle him to disregard Appellees' right to peaceful enjoyment of their residence. As we said above, his excuse that "it's a free country" does not entitle him to disregard the rights of his fellow citizens.

For these reasons, the time and manner restrictions in the preliminary injunction were well within the court's discretion because they are rationally tailored to curb Appellants' infringement of Appellees' rights.

Third, invoking the doctrine of unclean hands, Appellants argue that Appellees cannot obtain injunctive relief because they recorded Appellants' oral communications in violation of the Wiretap Act. We find no merit in this

argument because Appellants did not have a reasonable expectation in the communications that Appellees recorded.

A party who comes into a court of equity "must come with clean hands. The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue." *Morgan v. Morgan*, 193 A.3d 999, 1005 (Pa. Super. 2018). The doctrine "is derived from the unwillingness of a court to give relief to a suitor who has so conducted himself as to shock the moral sensibilities of the judge[.]" *Id.* "A court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue." *Id*. The court has "wide range" to "refuse to aid the unclean litigant," but "in exercising this discretion, the equity court is free to refuse to apply the [unclean hands] doctrine if consideration of the record as a whole convinces the court that [its] application . . . will cause an inequitable result." *Id.*

The Wiretap Act provides in pertinent part:

Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person ...

18 Pa.C.S.A. § 5725(a). The Act further defines an "oral communication" as

[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication.

- 16 -

18 Pa.C.S. § 5702. To establish a *prima facie* case under the Wiretap Act for interception of an oral communication, a claimant must demonstrate that: (1) he engaged in a communication; (2) he possessed an expectation that the communication would not be intercepted; (3) his expectation was justifiable under the circumstances; and (4) the defendant attempted to, or did successfully, intercept the communication, or encouraged another to do so. **Agnew v. Dupler**, 717 A.2d 519, 523 (Pa. 1998). **Agnew** explained that

> in determining what constitutes an 'oral communication' under the Wiretap Act, the proper inquiries are whether the speaker had a specific expectation that the contents of the discussion would not be intercepted, and whether that expectation was justifiable under the existing circumstances. In determining whether the expectation of non-interception was justified under the circumstances of a particular case, it is necessary for a reviewing court to examine the expectation in accordance with the principles surrounding the right to privacy, for one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy. To determine the existence of an expectation of privacy in one's activities, a reviewing court must first examine whether the person exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable.

*Id.* In **Agnew**, a police officer alleged that her chief violated the Wiretap Act by monitoring her squadroom conversations with another officer through an intercom system. Our Supreme Court held that these conversations were not "oral communications" under the Wiretap Act, because the officer did not possess a reasonable expectation of privacy in the conversations: the squadroom door was open, all conversations could be heard without amplification in the chief's office, the chief had the light on in his office, and

the intercom lines on squadroom telephones could have been open at any time.  *Id.* at 524.

More recently, in ***Pennsylvania State Police v. Grove***, 161 A.3d 877 (Pa. 2017), the Supreme Court addressed whether police officers violated the Wiretap Act when they captured oral communications at the scene of a motor vehicle accident through the use of cameras ("MVRs") mounted in police vehicles.  Proper analysis, the Court explained, "must begin with a showing that 'oral communications' are involved in the first instance; we need not reach the second question regarding notice if the individuals recorded could not have had a justifiable expectation the communications would not be intercepted."  *Id.* at 901.  Where conversations take place within earshot of others, the conversations are not "oral communications" under the Wiretap Act, because the individuals in the conversations "could have had no reasonable expectation of privacy, or any justifiable expectation that their statements and images were not being captured on MVRs, or by any number of cellphones for that matter."  *Id.* at 902.  The Court held that the Wiretap Act did not preclude disclosure of the MVRs' contents:

> Trooper Thomas's MVR included communications between the troopers themselves (who cannot possibly have had an expectation their conversations were not subject to interception), and between the troopers and the witnesses and drivers.  Our review of the record demonstrates these other speakers also could not have had a justifiable expectation their conversations would not be intercepted, and accordingly, the MVRs do not contain any "oral communications" protected under the Wiretap Act.  The conversations occurred in broad daylight at the scene of an accident on a public roadway, to which state police officers

responded. The conversations took place within earshot and easy view of bystanders or passersby . . . It is clear the individuals at the scene could have had no reasonable expectation of privacy, or any justifiable expectation that their statements and images were not being captured on MVRs, or by any number of cellphones for that matter.

*Id.* at 902.

Based on these authorities, we hold that Appellees' recordings of Appellants in the present case did not capture any "oral communications" under the Wiretap Act, because Appellants lacked a justifiable expectation their conversations would not be intercepted. The visual component of the recordings was entirely proper. Appellees did not film Appellants' personal areas, such as their bedrooms or bathrooms. Appellees placed their camera on the windowsill in their house and directed it outside at the driveway and the side of the detached garage where Appellants worked on vehicles. The audio component of the recordings was proper as well. The purpose of the audio recordings was to document the noise generated by Appellants' commercial automobile activities, not for capturing statements of persons on Appellants' property. When the camera captured statements, it was because Appellant Joseph Greer was cursing, yelling and/or gesturing at Appellees while fully aware that he was being recorded. Appellants had no reasonable

expectation of privacy in these public outbursts—especially when they were directed at or towards Appellees. Appellants' unclean hands argument fails.[7]

In summary, the trial court properly exercised its discretion by granting a preliminary injunction to Appellees.

Decision affirmed to the extent it granted preliminary injunction to Appellees. Appeal otherwise quashed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/19

---

[7] We also observe that Appellants' claim of unclean hands is unconvincing because Appellant Joseph Greer himself used cameras to record Appellees.