**SHELBOURNE SQUARE
ASSOCIATES, L.P.,
Appellant,**

v.

**BOARD OF SUPERVISORS OF TOWNSHIP OF EXETER, BERKS COUNTY, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 2, 2001.

Decided Feb. 20, 2002.

Reargument Denied April 25, 2002.

---

947

Allen R. Shollenberger, Wyomissing, for appellant.

Andrew J. Bellwoar, Exton, for appellee.

Before McGINLEY, Judge, LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

Shelbourne Square Associates, L.P. (Shelbourne), a real estate development partnership, appeals from the order of the

Court of Common Pleas of Berks County that sustained the decision by the Exeter Township Board of Supervisors to deny Shelbourne's application for a commercial subdivision and development.

Shelbourne owns a 45.65–acre tract of land in Exeter Township, Berks County, located along State Route 422, a busy arterial highway. The tract is zoned commercial and partially developed for a strip shopping center. The present appeal stems from Shelbourne's application to subdivide from the total tract a 6.32–acre lot with frontage along Route 422. Desiring direct access to Route 422 from the proposed lot, Shelbourne submitted with its subdivision application a Highway Occupancy Permit granted by the Department of Transportation (DOT) for construction of a high volume driveway[1] onto Route 422. Shelbourne obtained the permit from DOT prior to submitting the present subdivision application in hope of alleviating the Township's previously announced opposition to direct access from the lot onto Route 422. The Township had made clear its position on this issue when, in February of 1999, it denied subdivision approval for a plan filed in June of 1997, proposing a similar lot at the same location.[2] Shelbourne did not appeal this denial. Rather, after obtaining the DOT permit, it submitted the present application to create a similar lot, which met with the same Township opposition to the proposed Route 422 access. The Township Supervisors, based on the opinion of their engineering consultant and their personal

knowledge of the site, are convinced that direct access to Route 422 will present an unwarranted safety hazard. Their belief is based on the number of existing access points and the distance between them along the relevant section of the highway.

On November 22, 1999, at a regular meeting, the Supervisors reviewed with Shelbourne the plan deficiencies, Shelbourne's requests for waivers from selected provisions of the Subdivision and Land Development Ordinance (SLDO), and identified issues that could be deferred until the time of land development. Relevant to the proposed Route 422 access, the minutes of the Supervisors' meeting state:

> Item # 6 and 7 (Rt. 422 access), the Board told the developer and his representatives that they were not interested in having another access onto Rt. 422 and requested that the existing access to the shopping center be used. The developer indicated that he needed the Rt. 422 access in order to develop the site. PennDOT has issued a Highway Occupancy Permit for the access; however, the Board stated that several years ago PennDOT asked the Township to restrict access onto Rt. 422. They felt this is going to create additional traffic hazards on an already dangerous highway. Mr. Cuppels asked the Township Engineer if Great Valley looked at the traffic patterns with additional access. The Engineer was not certain and will check into it. The Developer is willing to work

---

1. A "high volume driveway" is defined as "[a] driveway used or expected to be used by more than 1500 vehicles per day." 67 Pa.Code § 441.1.

2. With respect to the prior application, the Board of Supervisors' minutes for the meeting on February 22, 1999 indicate that two of the three Township Supervisors expressed opposition to establishing access to the lot from

422, even if that access were limited to emergency use. With respect to the present application, the Township's engineer, in his letter of October 11, 1999, recommended that "the Township restrict access to SR 422 through this corridor. Any new lots should be reverse frontage with an access (common drive) extending to existing public streets which in turn access SR 422." R.R. 35a.

with the Board on coming up with a solution to this issue.

Minutes of the Exeter Township Board of Supervisors meeting November 22, 1999.

On December 21, 1999, based on the vote at its regular meeting on December 20th, the Township's Board of Supervisors issued its written denial of Shelbourne's subdivision application, stating its reasons as required by Section 508 of the Municipalities Planning Code.[3] The Board of Supervisors found that Shelbourne had not provided an Environmental Site Assessment specific to the proposed lot and containing all of the information required under Sections 609 and 633 of the Zoning Ordinance. The Supervisors further found that Shelbourne had not complied with the SLDO, as follows: submission of a combined "preliminary/final plan" in violation of Section 3.02, which requires separate submission and review of a preliminary and a final plan; failure to describe the property by reference to monuments and metal markers as required under Section 4.234; failure to list the size and material for construction of sanitary sewers and storm sewers as required by Section 4.2447; failure to provide ingress and egress via the internal road system of the existing shopping center as required by the Supervisors under Section 5.24; failure to submit a letter from the local water utility documenting adequate service as required under Section 5.74; and, submission of a traffic study pursuant to Section 5.900 that the Township's traffic consultant opined had "some deficiencies."

Shelbourne appealed to common pleas, arguing therein that it was entitled to subdivision approval because (1) the denial letter did not state reasons sufficient to justify denial of the plan, and (2) DOT's permit established a right to directly access Route 422. Shelbourne also contended that the Supervisors demonstrated bad faith when they proceeded to decide the application despite Shelbourne's "last minute" fax granting an extension of the time for decision imposed under Section 508 of the MPC.[4] The fax was delivered in the Township office at 5:38 p.m. on December 20th, just hours before the Supervisors' evening meeting. Without taking additional evidence and after hearing argument, common pleas concluded that the Township reviewed the plan in good faith and the denial letter fully complied with Section 508 of the MPC by stating with sufficient specificity the ordinance requirements with which the plan failed to comply. Common pleas affirmed the Supervisor's decision. Shelbourne filed the present appeal.

■ In *Herr v. Lancaster County Planning Commission*, 155 Pa.Cmwlth. 379, 625 A.2d 164 (1993), we summarized the law generally governing the review of a subdivision application as follows:

---

3. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508. Section 508 requires, in pertinent part, that:

   (1) The decision of the governing body or the planning agency shall be in writing. . . .

   (2) When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon.

4. Section 508 provides, in pertinent part, that:

   [T]he governing body or the planning agency shall render its decision and communicate it to the applicant not later than 90 days following the date of the regular meeting of the governing body or the planning agency (whichever first reviews the application) next following the date the application is filed. . . .

   53 P.S. § 10508.

Where a subdivision plan complies with all objective provisions of the applicable subdivision ordinance as well as all other applicable regulations the plan must be approved. The rejection of a plan may stand, however, if validly supported by even one of several objections. Where a plan is not approved as filed, the decision denying approval must specify the defects found in the plan and cite to the specific provisions of the ordinance which are relied upon.

*Id.* at 168–69 (citations omitted). After review,[5] we conclude that the majority of the grounds cited by the Township for its denial of the plan are insufficient. However, because the objection to direct Route 422 access is a valid reason to reject the subdivision, we affirm.

■ The denial letter specifies the sections of the zoning and subdivision ordinances that the plan does not satisfy. However, of the eight reasons listed as a basis for denial, seven do not justify denial of the plan. The letter lists as inadequate the reports on environmental and traffic impacts but does not identify specifically the information lacking therefrom. The Supervisors found the traffic report inadequate on the imprecise ground that "our consultant is of the opinion that there are some deficiencies in the Traffic Study submitted to us." Also, the letter does not identify the inadequacies in the Environmental Site Assessment but merely states that the report "did not meet the requirements of [zoning ordinance Section 609]."[6] These comments fall short of the specifici-

ty required under Section 508 of the MPC, 53 P.S. § 10508. The letter also points to the mislabeling of the plan as "preliminary/final" rather than simply "preliminary," failure to use the proper wording/format for the land survey, failure to describe the material and size of the water and sewer mains, and failure to submit a letter documenting adequate capacity from the water utility. These defects in the plan notations and labels are correctable by fairly simple amendments to the documents. None are the kind of objective defects in the subdivision itself that will justify outright denial rather than approval conditioned upon making the corrections. *See Stein v. Easttown Township Bd. of Supervisors,* 110 Pa.Cmwlth. 293, 532 A.2d 906, 912 (1987) (stating that where reasonable to do so the municipality should grant conditional plan approval rather than outright denial).

■ The Township asserts that it could not wait for amended paperwork from Shelbourne because it was forced to render its decision at the last regular meeting on December 20th before the expiration, on January 6th, of the time period mandated by the MPC. This argument ignores the purpose of the mandated decision period. The time period for decision mandated by the MPC is meant to protect the applicant from dilatory conduct by the municipality. *See Degroot v. Board of Supervisors of Tinicum Tp.,* 157 Pa.Cmwlth. 350, 629 A.2d 318, 320 (1993). For this reason, when Shelbourne waived the mandated decision period, the municipality was

5. The record certified from common pleas contains neither the ordinances (zoning and SLDO) nor the subdivision plan itself. These documents should be included in the certified record in every appeal from the denial of a subdivision application and their absence from the present record is vexing. Nevertheless, while the absence of these documents makes our review more difficult than need be,

it does not preclude our resolution of the particular issues presented in this case.

6. We note in addition that prior to the Supervisors' denial, the Township's engineer and the Planning Commission had indicated that the Environmental Site Assessment would not be required until the land development phase.

under no duty to act with haste to deny the application based on correctable defects in the application paperwork.[7]

The correctable defects, while not of themselves sufficient to deny the plan, are accompanied by a single legitimate substantive planning issue-the proposed Route 422 access.

Shelbourne contends that its plan can not be denied based on Route 422 access because the Township's authority to restrict highway access to Route 422 is preempted by DOT's issuance of a highway occupancy permit for direct access. We rejected this argument in *Ice v. Cross Roads Borough*, 694 A.2d 401 (Pa.Cmwlth. 1997), where we held that the issuance of a DOT permit did not abrogate the municipality's right to enforce a previously agreed upon condition of subdivision approval denying access to a state highway. In *Ice*, we concluded that if a municipality has, by ordinance, established limitations to accessing state highways "then a landowner seeking access to a state highway must be given permission for this access by both governmental entities [the municipality and DOT]. If either entity has a legitimate basis for denial, then the access cannot be granted." *Id.* at 405. The court in *Ice* recognized that there is "interplay between the State Highway Law and other laws enacted by either federal, state or local authorities." *Id.* at 404. The court described the interplay as follows:

> For example, 67 Pa.Code § 441.2 requires permittees to secure approvals or permits that may be required by law from federal, state and local authorities. 67 Pa.Code § 441.3(j) provides for review by municipalities, planning commission and zoning boards, indicating that the Department will consider comments or recommendations from the reviews by these entities before approving an access permit. Finally, 67 Pa.Code § 441.6(2)(I)(F) states that:
>
> > (2) **Additional restrictions.** All work authorized by the permit shall be subject to the following:
> >
> > (i) All applicable laws, rules and regulations, including but not limited to the following:
> >
> > . . . .
> >
> > (F) Ordinances enacted by local municipalities which contain more stringent minimum safety requirements than this chapter.

Thus, the Department's own regulations recognize that its highway access permits are subject to ordinances enacted

---

7. Appellants also claim that the Supervisors acted in bad faith calling for deemed approval as in *Raum v. Board of Supervisors of Tredyffrin Township*, 29 Pa.Cmwlth. 9, 370 A.2d 777 (1976). We disagree. In *Raum*, the Township denied a subdivision plan for reasons our court characterized as "trifling, over-technical, or simply unrelated to the law of zoning" in order to prevent development that had already received judicial sanction. *Id.* at 781. The court found bad faith demonstrated in "the overriding course of conduct of record, which exhibits a persistent intent to thwart our prior order and in turn the meaningful development" of the property. *Id.* The offensive conduct in *Raum* included raising the fees for application and plan review to an exorbitant level, attempting to rigidly impose a paving requirement that the Township's engineer called obsolete and which for many years had not been enforced against other development, and denying the development plan due to "de minimis surplusage" in the accompanying documentation. *Id.* By denying the plan, the Township hoped to open a window of opportunity to change the applicable zoning before resubmission of the plan.

In the present case, there is no evidence that the Township deliberately tried to thwart a well-conceived development that clearly conforms to its ordinances. The undue haste in pointing to correctable defects in planning documents as grounds for denial shows no signs of being a manipulative maneuver like that exhibited in *Raum*.

by local municipalities which contain more stringent minimum safety requirements.

. . . .

[I]f a municipality has no ordinances that in any way regulate access to roads within its boundaries, then the Department's permit alone would be enough to permit access to state highways. However, if a municipality has ordinances, as in the case here where the Borough's subdivision ordinance allowed for the condition limiting access to only subdivision roads, then a landowner seeking access to a state highway must be given permission for this access by both governmental entities. If either entity has a legitimate basis for denial, then the access cannot be granted.

*Id.* at 404–05.

∎ In the present case, the Township has, by a provision in its subdivision ordinance, established its authority to restrict access to Route 422 from the proposed lot. Section 5.24 of the SLDO provides that "Whenever a subdivision or land development abuts or contains an arterial or collector street, the Township may require restriction of access to the street by: provision of reversed frontage lots, or provision of service streets along the rear of abutting lots." Based on this provision and on the advice of its engineering consultant and the majority of the Planning Commission, the Supervisors demanded that Shelbourne provide access from the proposed lot to Route 422 via "the internal road system of the existing shopping center." This is a reasonable demand, designed to produce a coordinated plan of development on Shelbourne's entire 45–acre tract and thereby avoid the negative impacts, particularly to traffic flow, associated with piecemeal development of lots along the highway, each with individual highway access.

We recognize that if access to the lot could only practicably be achieved directly from Route 422, then the Township could not deprive Shelbourne of this access on the basis of the hazards created by high traffic volume alone. *See Hardee's Food Systems, Inc. v. Department of Transp.,* 495 Pa. 514, 434 A.2d 1209 (1981). However, Shelbourne controls the 45 acre tract from which the proposed lot will emerge and, therefore, indirect access to the lot is possible via the internal shopping center road. Under these circumstances, DOT's determination that direct access can be safely achieved is not the sole deciding factor. The Township, as authorized by its ordinance, may demand more than minimum safety and, if there is adequate support in the record, may demand indirect access in order to achieve reasonable land development objectives. In the present case, the Supervisors' decision to demand that the proposed lot be developed in coordination with the larger tract is adequately supported by the recommendations of the Township's engineer and Planning Commission. For this reason, we affirm.

### ORDER

AND NOW, this 20th day of February, 2002, the order of the Court of Common Pleas of Berks County in the above captioned matter is hereby AFFIRMED.