Jeffrey T. Vanvoorhis         :
and Susan L. Fox            :
                          :
       v.                 :
                          :
Shrewsbury Township,      :   No. 2056 C.D. 2016
              Appellant    :   Argued:  June 5, 2017


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge


OPINION
BY JUDGE COSGROVE                FILED:  December 21, 2017

Shrewsbury Township (Township) appeals from a December 9, 2016 Order of the Court of Common Pleas of York County (trial court) that granted the appeal of Jeffrey Vanvoorhis and Susan Fox (Appellees) and remanded the matter to the Board of Supervisors (Board) for further proceedings.  Upon review, we vacate and remand.

Article IV of the Township Zoning Ordinance (Ordinance) governs the use of lands within the Township's agricultural district.  Single-family detached dwellings, including mobile homes, tenant dwellings, and two-family dwellings are permitted as uses within the agricultural district, subject to certain conditions and limitations.  (Reproduced Record (R.R.) at 296a.)  These conditions and limitations are set forth in Article IV, Section 404 of the Ordinance.  Most pertinent to the matter

*sub judice* is the allocation of dwelling units[1] upon each parcel within the agricultural district. The number of dwelling units permitted upon each parcel within that district is determined by the parcel as it existed on November 10, 1976, the date the Township's original ordinance was enacted. *Id.* Section 404(4) of the Ordinance provides that a current owner may subdivide only that number of dwelling units remaining from the original number permitted by Section 404. *Id.* at 298a.

The property at issue here is a 45.5 acre horse farm (Property) owned by Appellees and located in an agricultural district within the Township. As it existed on November 10, 1976, the Property was afforded four development rights.[2] Located on the Property at that time was a farmhouse and a summer house.[3] On October 22, 1990, the Township issued to then-owner Tom Queitzch (Queitzch) a building permit for purposes of renovating the summer house. Queitzch's stated intention regarding the summer house was to turn it into a study and office space for his personal use. A bathroom was added to the existing structure, as well as an upstairs bedroom and closet.

In 1999, Queitzch subdivided 1.5 acres of the property. One development right was associated with the newly-created lot and three remained with the Property. Of the remaining three development rights, one was assigned to

---

[1] Dwelling unit is defined in Article II of the Ordinance as a building, or portion thereof, providing complete housekeeping facilities for one family. (R.R. at 289a.)

[2] The terms development rights and dwelling rights are used interchangeably by the parties to describe the rights associated with development of real property and the physical buildings located thereon. For the sake of clarity, we will refer to development rights. An available development right is a prerequisite for construction of a dwelling unit.

[3] The parties refer to the second building as both a summer house and a summer kitchen. For the sake of consistency, we will refer to it at all times as a summer house.

the farmhouse. No development right was assigned to the summer house. Appellees purchased the property in 2003.

On June 5, 2008, Appellees filed an application with the Township for subdivision and land development. For the next several years as the plan was revised, questions arose regarding the number of development rights remaining with the Property. Charles Rausch (Rausch), the Township solicitor, opined in a December 2, 2011 email and a January 11, 2012 memorandum that the Property had three development rights remaining, one allocated to the house with two rights remaining on the Property. The summer house was deemed a permitted accessory use to which no development right attached.

Appellees submitted their final subdivision plan to the Board on November 19, 2014. The plan was conditionally approved by the Board on January 8, 2015. One condition required amendment of the plan to designate the summer house as a tenant dwelling to which a development right would attach. Appellees declined to accept the condition and, consequently, the plan was rejected by the Township on January 22, 2015. This decision was appealed to the trial court, which, after granting Appellees' motion to supplement the record, took additional evidence on October 31, 2016. On December 9, 2016, the trial court entered an order which granted the appeal and remanded the matter to the Township for further proceedings. In its supporting opinion, the trial court concluded the summer house was a permitted use for which a development right was not required and Appellees had a vested right in not having a development right attached to the summer house. This appeal followed.[4]

---

[4] Where the trial court has taken additional evidence, this Court must review the trial court's findings and legal conclusions for error of law or abuse of discretion. *Borough of Jenkintown v. Board of Commissioners of Abington Township*, 858 A.2d 136, 138 (Pa. Cmwlth. 2004).

As set forth in the Township's brief, the following five issues are raised on appeal:

I. Is the Common Pleas Court Order appealable?[5]

II. If a subdivision plan is rejected on multiple grounds and at least one represents a clear ordinance violation is the plan properly rejected?

III. Did the lower court err in taking additional evidence to decide a zoning issue when the issue could not be resolved by the Board of Supervisors?

IV. Does the ordinance in existence on the date the plan was filed require that the summer house [] which was being rented as a separate dwelling unit utilize one of the tract's allocation of [development] rights?

V. Do the Appellees have a vested right to not having their summer house considered a dwelling unit utilizing a [development] right even if it is being used as a dwelling?

(Township's Brief, at 2-3.)

First, the Township addresses the appealability of the December 9, 2016 order. It argues the order is appealable by right per Pa.R.A.P. 311(f) because, following remand to the Board, the issue of whether a development right must attach to the summer house would be forever settled by the trial court's decision. We agree.

An appeal may be taken as of right from an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer that decides an issue that would ultimately evade appellate review if an

_____

5 In an order dated January 24, 2017, the parties were directed by this Court to address in their briefs the appealability of the trial court's December 9, 2016 order.

4

immediate appeal is not allowed. Pa.R.A.P. 311(f)(2). Before Appellees' subdivision plan could be approved and recorded, the Township required its compliance with four conditions, as set forth in the Township's January 8, 2015 letter. (R.R. at 252a.) Of those conditions, Appellees only objected to those which related to the assignment of a dwelling unit to the summer house. *Id.* at 49a.

The facts presented here are similar to those set forth in *Schultheis v. Board of Supervisors of Upper Bern Township*, 727 A.2d 145 (Pa. Cmwlth. 1999). In *Schultheis*, a developer's appeal of the denial of its preliminary subdivision plan was granted and the matter remanded with a directive that the developer be given the opportunity to correct any deficiencies in the plan. Once the developer revised the plan and presented it to the township, any issues appealable would be those relating to the revised plan and not the defective preliminary plan. This Court, concluding issues related to the preliminary plan would otherwise evade appellate review, found the matter immediately appealable.

Here, as the Township notes in its brief, the only point of contention between the parties was settled by the trial court. Logically, following remand, there should be no impediment to the Township accepting Appellees' plan. However, should the Township once more deny the plan, the trial court would only review the new reasons for denial, and none from the prior litigation. Whether the summer house should be assigned a development right is an issue that would evade appellate review if the order of the trial court were not deemed immediately appealable. Pursuant to Pa.R.A.P. 311(f)(2) and *Schultheis*, we conclude the December 9, 2016 order is immediately appealable and we may proceed with reviewing the Township's remaining arguments.

5

Next, the Township argues the subdivision plan was rejected on multiple grounds and at least one of those grounds represents a clear ordinance violation; therefore, the plan was properly rejected. The Township cites *Shelbourne Square Associates v. Board of Supervisors of Township of Exeter*, 794 A.2d 946 (Pa. Cmwlth. 2002) as standing for the proposition that a municipality's denial of a land development application will be upheld where there is a single valid reason to do so.

In *Shelbourne*, the developer sought review of the township's denial of its application for commercial subdivision and development. After reviewing the alleged defects in the plan, this Court determined that most were correctable by fairly simple amendments to the documents and none represented "objective defects in the subdivision itself that w[ould] justify outright denial." 794 A.2d at 950. The trial court's decision affirming denial of the plan was upheld by this Court because the correctable defects were accompanied by a "single legitimate planning issue…" *Id.* at 951.

In addition to the conditions which relate to assignment of a development right to the summer house, the Township rejected Appellees' plan for the following reasons:

1) Section 404.1(C) of the Township Subdivision and Land Development Ordinance (SALDO) requires all plans contain notarized signatures of all owners, and Appellees' plan failed to contain such signatures.

2) Section 404.5(F) of the SALDO requires that, prior to approval, Appellees obtain certification that the proposed method of sewage disposal be approved by the Department of Environmental Protection (DEP). This requires a planning module be approved by DEP prior to plan approval and no such planning module has been approved.

6

3) Appellees have failed to pay all fees as required by Section 319 of the SALDO.

(R.R. at 227a-229a.)

Presently, the conditions indicated by the Township were not substantial deficiencies, but rather correctable defects which were "not of themselves sufficient to deny the plan." *Shelbourne*, 794 A.2d at 951. Todd Zeigler (Zeigler), the Township Manager, referred to them as "housekeeping items" when testifying at the October 31, 2016 hearing. (R.R. at 179a.) Upon questioning by the trial court, Zeigler admitted the only conditions which were "deal breakers" concerned "development rights and the assignment of one to the [summer house]," and the DEP approval came in shortly after the Township conditionally approved the plan on January 8, 2015. *Id.* at 182a. Appellee Fox testified she had no objection to meeting all conditions required by the Township, with the exception of those which required assignment of a development right to the summer house. *Id.* at 49a. Given that the Township deemed these issues minor enough to grant conditional approval, and any issue requiring DEP approval appears to have resolved prior to the Township's denial of the plan, we cannot agree that any one of them constitutes a single legitimate basis for denying the plan. Whether a development right must be assigned to the summer house is a question to be resolved with the Township's final two issues presented.

The Township next argues the trial court erred in allowing the introduction of additional evidence. While conceding the trial court is vested with discretion to determine whether additional evidence may be introduced, the Township contends the trial court is not required to allow its introduction. The Township asserts that Appellees sought, and the trial court granted, zoning relief in

7

the nature of a variance. Had Appellees sought a variance, the matter would have proceeded before the Township Zoning Hearing Board, which would have conducted a hearing and rendered an adjudication from which an appeal could have been taken. The Township argues supplementation of the record would have been appropriate in that circumstance but where Appellees appealed the denial of its subdivision application, supplementation of the record was an error of law.

A decision as to whether to allow additional evidence is a matter within the discretion of the trial court. *McGrath Construction, Inc. v. Upper Saucon Township Board of Supervisors*, 952 A.2d 718, 729 (Pa. Cmwlth. 2008). In its opinion supporting the grant of Appellees' motion to supplement the record, the trial court noted that both parties relied on documents that were not part of the original record but supported their respective positions. (R.R. at 14a.) As the seminal issue before the trial court was whether a development right should attach to the summer house, it is unclear how the trial court erred in allowing the introduction of evidence which assisted with the decision-making process. Section 1005-A of the Pennsylvania Municipalities Planning Code [6] (MPC) provides that, if proper consideration of a land use appeal requires the presentation of additional evidence, the trial court may hold a hearing to receive additional evidence. 53 P.S. § 11005-A. Further, the Township has cited no case law that suggests a trial court is prohibited from ordering supplementation of the record where such evidence is required for resolution of the issues presented. Quite simply, and given the Board did not conduct a hearing, it would have been unwise, if not error, on the part of the trial court had it failed to take additional evidence in this matter.

---

[6] Act of July 31, 1968, P.L. 805, *added by* Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005-A.

8

Next, the Township argues the Ordinance requires the summer house utilize one of the Property's development rights. When determining a development right need not attach to the summer house, the trial court applied the ordinance in existence at the time the summer house was renovated. While the Township contends the trial court applied the incorrect ordinance, it argues a development right must be assigned to the summer house, regardless of which ordinance is considered.

Under Section 508(4)(i) of the MPC, the ordinance in effect at the time the subdivision plan is filed governs the approval process. 53 P.S. § 10508(4)(i). Appellees filed their plan in 2008. Therefore, the Ordinance adopted by the Township in 2003, as amended in 2006 and 2007, would have applied to the plan.

Section 404 of the Ordinance governs dwelling units and the allocation of development rights within the agricultural district. (R.R. at 292a – 303a.) The trial court accepted Appellees' argument that the summer house was a permitted use that could not have a development right assigned to it. (R.R. at 12a.)

The Township's determination that a development right must be allocated to the summer house is in large part based on its characterization of the summer house as a tenant dwelling. Should we determine, as the Township did, that the development right attaches because a tenant resides in the summer house, the development right logically should revert to the Property if an existing tenant has vacated the premises and a new tenant is not occupying the space. The Township suggests a development right would attach regardless of whether the summer house was occupied by a tenant.

There is no dispute that, pursuant to Section 404(1) of the Ordinance, the Property as it existed on November 10, 1976, had four development rights. In 1999, when the Property was subdivided, one development right was conveyed with

9

the subdivided parcel, leaving three rights remaining, as no development right attached to the summer house.

The disposition of this issue ultimately turns on the characterization of the summer house's use. "Use" is defined in Article II of the Ordinance as "[a]ny activity carried on or intended to be carried on in a building or other structure or on a lot." (R.R. at 291a.) An accessory use is a subordinate use normally located on a lot with a principal use. *Id.* If no principal use exists on a lot with a lawful accessory use, the accessory use shall be considered a principal use. *Id.* The farmhouse on the Property would constitute a principal use. If more than two principal uses occupy a single lot, each such use must be positioned so that the lot on which such uses are located could subsequently be subdivided. *Id.* The summer house shares utilities and sewer facilities with the main house. *Id.* at 34a. As such, and in its current incarnation, the summer house cannot be subdivided. Its current use therefore cannot qualify as a principal use.

The permitted accessory uses within the agricultural district are set forth in Article IV, Section 402 of the Ordinance. (R.R. at 293a.) One such use is "buildings and uses customarily incidental to a permitted principal use." *Id.* The Ordinance does not require allocation of a development right to such an accessory use. A tenant dwelling is also a permitted accessory use, but it requires utilization of a development right. *Id.* The definition of tenant dwelling is included within the overall definition of dwelling set forth in Article II of the Ordinance. A tenant dwelling is defined therein as a second single-family dwelling, located on the same farm parcel as, but not attached to, a principal single-family dwelling. Despite the assertions of the Township in its brief, the Ordinance clearly does not require

10

allocation of a development right to the summer house regardless of the manner and use to which it is put.

It is not the duty of the appellate court to find the facts, but to determine whether there is evidence in the record to justify the trial court's findings of fact. *Allegheny County v. Monzo*, 500 A.2d 1096 (Pa. 1985). The Township's own witnesses and evidence in the record indicate a development right must only be utilized by the summer house if it is used as a tenant dwelling.[7] However, it is not clear from the facts in the record whether Appellees' use of the summer house from 2003 through the present renders it a tenant house or a building and use customarily incidental to a permitted principal use.

At the October 1, 2014 Board meeting, Appellee Fox was asked by the Board Chairman if the summer house was a tenant dwelling and she responded it was not. (C.R., Defendant's Exhibit 42 at 3.) This assertion is belied by evidence of record which suggests the summer house was, in fact, occupied by tenants in 2009, 2012, and 2015. (R.R. at 417a-419a.) At other times, it was occupied by Appellee Fox's father, farm help, friends, and other people known to the Appellees. *Id.* at 36a. Appellee Fox testified that only two individuals, Tim and Anna Marie Dixon, rented the property. *Id.* at 37a. All other occupants worked at least part time for Appellees on the horse farm. *Id.*

---

[7] At an October 1, 2014 meeting of the Board, Township solicitor Timothy Bupp stated that the relevant issue was the use proposed for the summer house and, if the summer house was not used as a tenant dwelling, it did not require use of a development right. (Original Record (O.R.), Defendant's Exhibit 42 at 3.) At the October 31, 2016 hearing, Keith Hunnings (Hunnings), a consultant for the Township on zoning matters, testified that another property with a summer house was not required to utilize a development right upon subdivision of the parcel. (R.R. at 206a.) The summer house for that property was used as a bedroom for the owners' son. *Id.* Curiously, Zeigler testified at the October 31, 2016 hearing that a dwelling would have required use of a development right even prior to the adoption of the ordinance in 1976. *Id.* at 187a.

11

Appellees' ownership of the Property has spanned well more than a decade but the record is only explicitly clear in regards to three years – 2009, 2012, and 2015 – during which the summer house was occupied by tenants, paying or otherwise. The record is otherwise largely silent. Based on the facts before us, it is not possible to determine whether the summer house constitutes a tenant dwelling to which a development right must be allocated (and the facts as developed thus far may suggest otherwise). We therefore conclude a remand is necessary for further fact finding and development of such a record.

Finally, the Township argues the trial court erred in finding Appellees have a vested right in "not having a [development right] attached to the summer house." (R.R. at 12a.) As the trial court based its decision in part on representations made by the Township's legal counsel, the Township cites *Earl Township v. Reading Broadcasting, Inc.*, 770 A.2d 794 (Pa. Cmwlth. 2001), and maintains that any opinions provided by its solicitor are not binding unless adopted by the Township in some official manner.

A vested right is an equitable remedy under which a municipality may be estopped from enforcing a land use regulation. *Vaughn v. Zoning Hearing Board of Township of Shaler*, 947 A.2d 218, 224-225 (Pa. Cmwlth. 2008). Such a right attaches when a municipality has taken some affirmative action, such as the issuance of a permit. *Id.* at 225. The Township asserts Appellees' claim is more appropriately labeled "equitable estoppel." (Township Brief at 30). We agree. Equitable estoppel is appropriate where the municipality intentionally or negligently misrepresented its position with reason to know the landowner would rely upon that representation. *Vaughn*, 947 A.2d at 225. This Court will not reverse the trial court's final decree

12

in equity if apparently reasonable grounds exist for the relief ordered and no errors or inapplicable rules of law were relied on.  *Earl Township*, 770 A.2d at 798.[8]

The Township's reliance on *Earl Township* is misplaced, as the facts in that case make it easily distinguishable from the matter currently before this Court. In *Earl Township*, the township solicitor opined to RBI, a broadcasting company seeking to construct a new broadcast tower, that RBI constituted a public utility, and was thus excused from the requirement that it obtain a building permit prior to construction of the tower.  When the township later sought to enjoin RBI from building the tower until it obtained a proper permit, RBI asserted the township was equitably estopped from seeking relief because of previous representations made to RBI.  The trial court concluded the solicitor was merely expressing a legal opinion which was contrary to the U.S. Supreme Court's decision in *Federal Communications Commission v. Midwest Video Corporation*, 440 U.S. 689 (1979) (television broadcaster cannot be considered a common carrier), decided some two decades earlier.  Under Section 619 of the MPC, adopted by the township as part of its ordinance, an entity must be a common carrier before it will be considered a public utility.  *See* 53 P.S. § 10619.  *Midwest Video* was available to the township solicitor as well as to RBI and its counsel, and the trial court found the claim of equitable estoppel unsupported.  This Court affirmed the order of the trial court.

Unlike the parties in *Earl Township*, in the case *sub judice*, two different Township solicitors provided legal opinions on multiple occasions regarding the development rights remaining on the Property.  It has not been argued

---

[8] "[A]*equitas prima est* – where equity applies, equity is supreme." *Brown v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 9 C.D. 2016, filed November 30, 2017, slip op. at 5.)

13

here that these opinions were made in contravention of long-established jurisprudence.

In order to apply equitable estoppel, the party seeking to be estopped must have intentionally or negligently misrepresented some material fact, knowing or having reason to know that the other party would justifiably rely on the misrepresentation, and inducing the other party to act to his or her detriment because he or she justifiably relied on the misrepresentation. *Cicchiello v. Bloomsburg Zoning Hearing Board*, 617 A.2d 835, 837 (Pa. Cmwlth. 1992).

Appellee Fox testified extensively regarding her understanding of the development rights associated with the Property. Prior to purchasing the Property, Appellee Fox contacted Township solicitor Gil Malone (Malone) and expressed her concerns about development rights. (R.R. at 31a.) She contacted Malone because he had held the position of solicitor for several decades, and he was "the one that the [T]ownship use[d] to verify development rights." *Id.* at 32a. Malone was also at that time representing the sellers of the Property. *Id.* On the day of settlement, Malone provided documentary proof he had researched the issue of development rights. *Id.* at 32a-33a. At no time were Appellees advised of conditions or restrictions regarding the use of the summer house. *Id.* at 33a. Appellees would not have purchased the property had they known a development right would attach to the summer house upon its use as a rental property. *Id.*

No restrictions or conditions were attached to the building permit issued in 1990 which granted Queitzch the right to renovate the summer house. (R.R. at 34a, 271a.) When Appellee Fox viewed the Property prior to purchase, the summer house was fully furnished, with bedroom furniture present in the upstairs room. *Id.* at 26a. The property listing stated two development rights would be conveyed with

14

the Property, and the summer house came with one bedroom, a kitchen, and a bath. *Id.* at 239a, 241a. When Appellees purchased the Property, it was represented to them as a tenant house and a summer house available for any use. *Id.* at 68a.

Brian Kaltreider performed the 1990 renovations to the summer house and viewed the property prior to the October 31, 2016 hearing. He testified that, beyond a change in the exterior color of the building, it had not changed since the renovations were completed. (R.R. at 109a.) The renovations in 1990 consisted of tying in the electric and sewage facilities to the main house and making use of the second floor as a bedroom. *Id.* at 110a.

In 2005, Appellees submitted a sketch plan to the Township with the intention of subdividing the Property and selling two of the available development rights. (R.R. at 40a.) Appellees were never advised by the Township that those rights were unavailable. *Id.* at 41a. In June 2008, Mike Lee (Lee), the codes enforcement officer, reported at a meeting of the Township Planning Commission (Commission) that Appellees had two development rights remaining on their property. *Id.* at 278a. It was not until November 2011 that Appellees became aware of a potential issue with the development rights on the Property. *Id.* at 44a. Minutes from the November 16, 2011 meeting of the Commission indicated that Hunnings was to review the development rights on the Property and present his findings at the December 21, 2011 meeting. *Id.* at 280a. At that December 11, 2011 meeting, Hunnings reported the issue of development rights was "a legal matter and Solicitor Rausch [wa]s reviewing it." *Id.*

With regard to Rausch's review, an email dated December 2, 2011 was sent from Rausch to the Board and Commission. (R.R. at 284a.) That email stated the summer house was "an accessory dwelling unit" which did not require

15

assignment of a development right. *Id.* The email was followed by a letter dated January 11, 2012 in which Rausch opined that "[i]f the summer house was considered a separate dwelling unit by the improvements made in 1990, then the allocation of a development right should have been reflected in [] 1999… Since the Township did not require that the summer house be allocated a development right in 1999, the parcel still has three [development rights] remaining, one which is to be allocated to the existing dwelling. That leaves two [development rights] remaining on the parcel to be used by the [Appellees]." *Id.* at 285a.

Earl Schuckman (Schuckman), the Township Supervisor from 2000-2009, testified on behalf of the Township. Schuckman averred that any questions on development rights were sent to Mike Lee and Malone. (R.R. at 117a.) At that time, Lee was the zoning and codes enforcement officer and Malone represented both the Board and Commission. *Id.* According to Schuckman, those seeking to subdivide their property and the Board reasonably relied on the opinions of Lee and Malone. *Id.* at 118a.

Zeigler also testified on behalf of the Township. His testimony regarding the reasons behind allocation of a development right to the summer house was inconsistent and conflicting. Initially, Zeigler maintained the summer house was a dwelling unit requiring utilization of a development right based on the tenant registrations submitted by Appellees in 2009, 2012, and 2015. (R.R. at 144a.) He later testified that Township records indicated that, as far back as 1990, if a property had more than one building on a parcel, a development right was assigned to the additional buildings. *Id.* at 154a. This is clearly not consistent with the fact that no development right was exhausted when the Property was subdivided in 1999. Zeigler acknowledged a second time, on cross examination, that the Township's

16

opinion that a development right attached to the summer house was based on the existence of tenants. *Id.* at 163a. Zeigler had no personal knowledge of how the summer house was used prior to 2009. *Id.*

It is clear from the record before us that Appellees believed, based on representations made by the Township, that no development right attached to the summer house. What is not clear, however, is whether the Township knew, at the time the Township's opinions were sought, of the exact use to which the summer house was put. As indicated by our prior analysis, that use is key in determining whether the summer house must be designated a tenant dwelling or if it qualifies as some other type of accessory use. Critical to a conclusion that relief by means of equitable estoppel is warranted is a finding that facts were misrepresented. A conclusion as to any alleged misrepresentation of facts by the Township cannot be reached without first understanding what information was provided to the Township by Appellees. A remand is therefore necessary to establish, quite simply, what the Township knew regarding the use of the summer house, and when the Township knew it.

For these reasons, we vacate the order of the trial court and remand this matter to the trial court for remand to the Board for further development of the record.

_____
JOSEPH M. COSGROVE, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey T. Vanvoorhis
and Susan L. Fox

           v.

Shrewsbury Township,
                  Appellant

:
:
:
:
:
:
:     No. 2056 C.D. 2016
:

O R D E R

AND NOW, this 21st day of December, 2017, the December 9, 2016 order of the York County Court of Common Pleas is vacated and this matter is remanded to the York County Court of Common Pleas for further proceedings consistent with this opinion. Jurisdiction is relinquished.

_____
JOSEPH M. COSGROVE, Judge