IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Freedom Ardmore LP,                          :
                          Appellant           :
                                             :
              v.                             :  No.  167 C.D. 2021
                                             :  Argued:  November 15, 2021
Lower Merion Township Board                   :
of Commissioners                             :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                          FILED:  December 16, 2021


          Freedom Ardmore LP (Appellant) appeals the February 2, 2021 Order
of the Court of Common Pleas of Montgomery County (trial court) affirming the
Lower Merion Township Board of Commissioners' (Appellee) denial of Appellant's
mandatory sketch plan (Sketch Plan).  Before this Court, Appellant argues that the
trial court committed an error of law or abused its discretion when it affirmed
Appellee's denial of Appellant's Sketch Plan based, in part, on the determination
that the Sketch Plan does not comply with Section 135-24(D)(3) of the Subdivision
and Land Development Ordinance (SALDO)[1] because Appellant failed to justify the

---

[1] Section 135-24(D)(3) of the SALDO reads:

proposed partial rear demolition of 38 West Lancaster Avenue, Ardmore, Lower Merion Township, Pennsylvania (Subject Property). Additionally, Appellant asserts that Appellee committed an error of law or abused its discretion when it denied the Sketch Plan based, in part, on the determination that the Sketch Plan does not comply with Section 155-87.20.C(8) of the Lower Merion Township Zoning Code,[2] due to noncompliance with the United States Secretary of the Interior Standards for Rehabilitation (Secretary Standards).[3] Appellee contends that it neither erred nor

Every subdivision or land development plan shall be designed to preserve and protect historic sites and structures. The burden shall be on the developer to justify any material changes in historic sites and structures by satisfactory proof that subdivision or land development would not be feasible without such changes and that there are no practical alternatives which would permit the preservation of this historical nature of the property. The fact that subdivision or land development would involve greater expense or less density because of the maintenance of historic sites and structures will not in and of itself be considered a justification for material changes or alterations to such historic sites or structures.

Lower Merion Twp., Pa., Zoning Code Part II, Chapter 135, § 135-24(D)(3) (1988).

[2] Section 155-87.20.C(8) of the Lower Merion Township Zoning Code (Zoning Code) reads:

The rehabilitation, alteration, or enlargement of any Class I or Class II Historic Resource in the Ardmore Historic District and identified on the Historic Resource Inventory appended to the Lower Merion Township Code as Chapter A180 and located in the [Mixed-Use Special Transportation (MUST) District] is subject to the regulations in the current version of the [United States] Secretary of the Interior's Standards for Rehabilitation of Historic Structures. A recommendation from the Lower Merion Township Historic Architectural Review Board or the Historical Commission must be obtained as required by Chapter 88. [Added 3-18-2015 by Ord. No. 4053.]

Lower Merion Twp., Pa., Zoning Code § 155-87.20.C(8) (2015).

[3] *See* Standards for Rehabilitation, National Park Service, United States Department of Interior, https://www.nps.gov/tps/standards/four-treatments/treatment-rehabilitation.htm. (last visited Dec. 15, 2021).

abused its discretion by denying Appellant's Sketch Plan because Appellant failed to justify demolition of the auditorium portion of the Subject Property under Section 135-24(D)(3) of the SALDO. Further, Appellee maintains that it did not commit an error of law or abuse its discretion through its denial of Appellant's Sketch Plan because Appellant failed to adhere to the Zoning Code, which explicitly adopts and requires compliance with the Secretary Standards. Upon review, we affirm the Order of the trial court.

## I.     Background

Appellant is the record owner of the Subject Property, the site of the former Ardmore Theatre, a movie theater which operated from 1922 until 2000. Reproduced Record (R.R.) at 239a. In 2000, the Subject Property was converted to a sports club and was used for that purpose until 2014. The Subject Property has since operated as a retail outdoor furniture store. Throughout these use transitions, the Subject Property has remained largely intact despite some front façade modifications and the removal of some interior architectural features for its prior functional use as a sports club. *Id.* at 249a.

The Subject Property, a 17,685-square-foot building, remains structurally sound and currently maintains its two original sections, the headhouse and the auditorium.[4] *Id.* at 264a-65a. The headhouse extends to a depth of approximately 50 feet from the sidewalk along Lancaster Avenue, and the auditorium section, formerly the theater portion of the building, extends an additional 185 feet. *Id.* The headhouse section is two stories in height, while the auditorium section is approximately one story higher at its connection to the

_____

[4] In its brief, Appellee notes that, within its filings, Appellant refers to the auditorium portion of the Subject Property as a "brick windowless box." Appellee's Br. at 2 n.1 (citing R.R. at 1265a-69a).

3

headhouse section and approximately five stories in height at its rearmost elevation due to the natural slope of the ground. *Id.* at 49a.

On July 22, 2019, Appellant filed an application for land development approval of its Sketch Plan.[5] *Id.* at 111a. Appellant's Sketch Plan detailed a proposed 18-unit non-rental condominium construction project in the auditorium section of the Subject Property. *Id.* at 30a. The new residential addition to the Subject Property would include 7 stories, 5 of which would house the residential units with the other 2 stories providing a total of 17 parking spaces for the units' residents. *Id.* This construction would necessitate the complete demolition of the auditorium section of the Subject Property. *Id.* at 135a-37a. Additionally, Appellant detailed plans to renovate the Lancaster Avenue frontage of the building, including the installation of an historically sensitive decorative canopy in place of the present marquee to serve as the primary entrance to the residential addition. *Id.*

The Subject Property is a Class I historic resource under the Lower Merion Township Zoning Code, the highest level of historic classification in Lower Merion Township.[6] *Id.* at 244a. The Subject Property is a contributing resource in

---

[5] Appellant submitted additional documents to Appellee, including: (1) a building layout and architectural elevation plan sheets prepared by Nelson Architecture & Interiors, Inc. (Nelson); (2) a fiscal impact analysis prepared by Erik Hetzel, American Institute of Certified Planners, Professional Planner (AICP, PP), which concluded a total net annual fiscal impact of $509,328; (3) a transportation impact study prepared by Traffic Planning and Design, Inc., which concluded that the traffic related to the proposed redevelopment of the site would not be new to the area and is anticipated to be less than the former gym use; (4) a letter by Nelson dated November 13, 2019, which concluded that retaining the auditorium section of the Subject Property is "outweighed by the cost" along with a supporting Structural Feasibility Report prepared by O'Donnnell & Naccarato; and (5) a letter by Nelson dated December 20, 2019, outlining Appellant's cumulative plan revisions in response to the three meetings with the Historic Architectural Review Board (HARB). R.R. at 208a, 228a-29a, 317a, 322a, 1462a, 1469a.

[6] *See* Lower Merion Twp., Pa., Zoning Code § A180-1.

4

the Ardmore Center Commercial Historic District and was determined eligible for the National Register of Historic Places by the Pennsylvania Historical and Museum Commission in 1991. *Id.* at 239a. Thus, because the proposed renovation of the Subject Property would take place within an Historic District, Appellant was required to submit the Sketch Plan to the Lower Merion Township Historic Architectural Review Board (HARB)[7] for review. *Id.* at 111a, 131a-39a.

Appellant presented its Sketch Plan to the HARB for initial review at its September 10, 2019 meeting. *Id.* at 131a-39a. At the meeting,

> HARB had concerns about the following issues:
>
> 1. The viability of re-use: The HARB does not believe that it has been demonstrated that it is appropriate under the [Secretary Standards] to remove the auditorium section of the building, and the HARB would like to have more information regarding the structural integrity of that section of the building.
>
> 2. Height.
>
> 3. Massing.
>
> 4. The treatment of the rear of the building with respect to the residential neighborhood.
>
> 5. The impact on the adjacent historic buildings and the historic district as a whole.
>
> 6. The precedent set by the new construction in the historic district.

---

[7] "The HARB is a specialized body which, under the Lower Merion Code, is comprised of nine members, including a registered architect, a licensed real estate broker, a building inspector and six additional individuals with knowledge of and interest in the preservation of historic districts." R.R. at 1565a; Trial Ct. Op., 04/09/2021, at 13 (citing Lower Merion Zoning Code § 88-4).

5

*Id.* at 139a. The HARB also met on December 3, 2019, and once again reviewed the Sketch Plan with Appellant's representatives, expressing many of the same concerns. *Id.* at 144a-48a. Finally, on January 7, 2020, the HARB held a meeting where it conducted its final review of Appellant's Sketch Plan and acted on its recommendation. *Id.* at 154a-58a.

At this final meeting, the HARB found that "the rear auditorium portion [of the Subject Property] is a character-defining feature of the building." *Id.* at 157a. Further, citing Secretary Standards Nos. 1, 2, 9, and 10, the HARB opined:

> *1. A property will be used as it was historically or be given a new use that requires minimal change to its distinctive materials, features, spaces, and spatial relationships.*
>
> The demolition of two-thirds of the building is not a minimal change, and the rear auditorium is a character-defining feature. The HARB's main concern has been the special relationship of the volume of the proposed structure to the "headhouse" and the public rights-of-way of Lancaster Avenue and Haws Terrace.
>
> *2. The historic character of a property will be retained and preserved. The removal of distinctive materials or alteration of features, spaces, and spatial relationships that characterize a property will be avoided.*
>
> The impact on the resource as it relates to this Standard is similar to that of Standard 1. The auditorium, a character-defining feature, would be demolished.
>
> *9. New additions, exterior alterations, or related new construction will not destroy historic materials, features, and spatial relationships that characterize the property. The new work will be differentiated from the old and will be compatible with the historic materials, features, size, scale and proportion, and massing to protect the integrity of the property and its environment.*
>
> The scale of the new construction would be incompatible with the front volume of the building and the Ardmore Historic District (its "environment") as a whole. Historic materials, features, and special

6

relationships that characterize the property would be destroyed. The National Park Service Preservation Brief #14, which elaborates on Standard 9, reads that "a new addition should be subordinate to the historic building; it should not compete in size, scale, or design with the historic building," and the new construction would not meet this goal.

*10. New additions and adjacent or related new construction will be undertaken in [] such a manner that, if removed in the future, the essential form and integrity of the historic property and its environment would be unimpaired.*

If the majority of a historic resource is being demolished, the addition's potential removal in the future would not result in the retention of the resource's form and integrity.

*Id.* at 157a-58a; *supra* note 3 (emphasis added). Thus, the HARB presented Appellee with a recommendation to deny a Certificate of Appropriateness for Appellant's Sketch Plan. R.R. at 1412a.

On January 22, 2020, Appellee held a meeting and denied the Certificate of Appropriateness because Appellant "failed to meet its burden to justify the demolition of the historic structure in violation of [Section] 135-24(D) of the [SALDO]." *Id.* at 1409a. As a further reason for denial, Appellee found that the Sketch Plan does not "comply with Zoning Code [Section] 155-87.20(C)," which requires a recommendation from the HARB. *Id.* at 1410a. In a letter to Appellant dated February 4, 2020, Appellee stated: "It is noteworthy that the recommendation of the HARB was received, as required by the Zoning Code. This advisory board recommended that the development plan be denied." *Id.* at 1411a.

On February 20, 2021, Appellant appealed Appellee's denial of its Sketch Plan to the trial court. Trial Ct. Op., 04/09/2021, at 5; R.R. at 1557a. Appellant asserted that it satisfied Section 135-24(D) of the SALDO by submitting a structural report, which demonstrated that repurposing the rear auditorium section

7

of the Subject Property for residential use would not be feasible. In fact, Appellant contended that the reutilization and incorporation of the existing auditorium would require a temporary bracing system and underpinning of the foundation, which at the cost of approximately $1 million, would be cost prohibitive. R.R. at 145a. Before the trial court, Appellant also argued that the Secretary Standards are subjective in nature and constitute guidelines that have no regulatory effect, and because Appellee relied on these Standards in determining whether to approve the Sketch Plan, it abused its discretion by relying on factors outside of its code and ordinances. Trial Ct. Op., 04/09/2021, at 9. Further, even if the use of the Secretary Standards was appropriate, Appellant maintained that the demolition of the auditorium portion of the Subject Property would not violate any of the Secretary Standards. *Id.*

The trial court affirmed the decision of Appellee on February 2, 2021, finding that Appellant failed to meet its burden to demonstrate its satisfaction of the requirements set forth under Section 135-24(D)(3) of the SALDO and of the Secretary Standards as incorporated in Section 155.87-20.C(8) of the Zoning Code, Code § 155.87-20.C(8), Trial Ct. Op., 04/09/2021 at 9, 15. Specifically, the trial court noted that Appellant did not address the concerns of the HARB and Appellee concerning the auditorium section of the Subject Property as a character-defining feature in the Ardmore Historic District and how its loss would affect compliance with the Secretary Standards. *Id.* at 14-15. Appellant now appeals to this Court.[8]

---

[8] In an appeal from a governing body's approval or denial of a land development plan, as here, where the lower court has taken no additional evidence, this Court's review is limited to a determination of whether the governing body committed an abuse of discretion or an error of law. *In re Appeal of Molnar*, 441 A.2d 487, 489 (Pa. Cmwlth. 1982) (citations omitted). A governing body abuses its discretion if its findings are not supported by substantial evidence. *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998). "Substantial

8

## II.    Discussion

Before this Court, Appellant asserts that Appellee's reliance on Section 135-24(D)(3) of its SALDO to deny the Sketch Plan constitutes an abuse of discretion and reversible error.  Additionally, Appellant argues that Appellee's reliance on Section 155-87.20.C(8) to deny the Sketch Plan also constitutes an abuse of discretion and reversible error.  Appellee maintains that it did not commit an error of law or abuse its discretion by finding that Appellant failed to justify the demolition of the auditorium portion of the Subject Property in violation of Section 135-24(D)(3) of the SALDO or by finding that Appellant failed to comply with the SALDO and Zoning Code insofar as they require compliance with the Secretary Standards.

### A. Section 135-24(D)(3) of the SALDO

Section 135-24(D)(3) of the SALDO requires that every land development plan be designed to preserve and protect historic sites and structures. R.R. at 1124a-25a.  This provision, in relevant part, states that the

> burden shall be on the developer to justify any material changes in historic sites and structures by satisfactory proof that subdivision or land development would not be feasible without such changes and that there are no practical alternatives which would permit the preservation of this historical nature of the property.

*Id.*    However, under the SALDO, additional costs and/or decreased density associated with the maintenance of historic sites and structures are not alone

---

evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).  "[E]vidence must be viewed in a light most favorable to the prevailing party, who must be given the benefit of all reasonable inferences arising from the evidence." *In re McGlynn*, 974 A.2d 525, 534 n.9 (Pa. Cmwlth. 2009).

9

considered a justification for material changes or alterations to such historic sites or structures. *Id.*

Appellant asserts that it satisfied Section 135-24(D)(3) of the SALDO by submitting Nelson's November 13, 2019 report which demonstrated that the cost of temporarily bracing, shoring, and underpinning the rear auditorium section of the Subject Property would likely exceed $1 million and that "the minimal retention of the brick walls and piers is outweighed by the cost." *Id.* at 229a. Further, Appellant notes that Nelson appended a Structural Report prepared by O'Donnell & Naccarato on October 24, 2019, which stated that the area below the existing wall foundations must be excavated and requires an underpinning of the existing masonry. To maintain the auditorium section of the Subject Property, according to the Structural Report, the existing masonry would be subjected to substantial removal to accommodate windows and ventilation of the residences. *Id.* at 1462a.

Appellant cites *Robal Associates, Inc. v. Board of Supervisors of Charlestown Township*, claiming that this Court's statements that an "ordinance must contain standards by which compliance can be measured" and that "unmet requirements must be substantive," directly conflict with Appellee's denial of its Sketch Plan. 999 A.2d 630, 636 (Pa. Cmwlth. 2010). However, to contextualize, the statements highlighted by Appellant follow a broader discussion by this Court:

> If legitimate, a single reason may support denial of a preliminary land development plan. *Kassouf [v. Twp. of Scott*, 883 A.2d 463 (Pa. 2005)]. This Court formulates the test in the following manner: Where a subdivision plan complies with all objective provisions of the applicable subdivision ordinance as well as all other applicable regulations the plan must be approved. The rejection of a plan may stand, however, if validly supported by even one of several objections.

*Id.* at 635 (citing *Shelbourne Square Assocs., L.P. v. Bd. of Supervisors*, 794 A.2d 946, 950 (Pa. Cmwlth. 2002)). Appellant asserts because the SALDO offers no specific, objective criteria by which the justification for the demolition can be measured, Appellee erred by denying its Sketch Plan under Section 135-24(D)(3) of the SALDO.

Appellee contends that because the SALDO explicitly states that the greater expense of preservation is not, in and of itself, justification for demolition, it gives historic preservation priority. R.R. at 1124a-25a. Appellee further notes that Appellant asks that its own conclusion that the cost of preservation is too high serve as a definitive finding that any preservation of the auditorium section of the Subject Property is infeasible, lacking all practical alternatives. *See* Appellee's Br. at 17. Additionally, in Appellee's view, its SALDO's inclusion of density concerns further underscores Appellant's failure to properly justify its Sketch Plan. *Id.* Section 135-24(D)(3) of the SALDO explains that both "greater expense" or "less density" "will not in and of itself be considered a justification for material changes or alterations to such historic sites or structures." R.R. at 1124a-25a.

The trial court stated: "To the extent [Appellant]'s choice to construct a building this tall was driven by a desire to achieve a greater density of condominiums, this consideration does not serve as a justification under the SALDO for the detrimental impact upon the historical appearance of the theater building." Trial Ct. Op., 04/09/2021, at 8. Additionally, the trial court found that Appellant's reliance on the Nelson report as justification for demolition of the auditorium section of the Subject Property necessarily fails. *See id.* While Appellant assessed that the $1 million cost of maintaining the auditorium section of the Subject Property was infeasible, under the SALDO, greater expense alone does not serve as justification

11

for material changes or alterations to historic sites or structures. SALDO § 135-24(D)(3).

Before this Court, Appellant once again relies exclusively on the projected cost of preserving the auditorium section of the Subject Property and on a "necessary" increase in dimensions and density "in order to give the project a chance to succeed" as justification for its demolition. R.R. at 1202a. However, Section 135-24(D)(3) of the SALDO clearly states that greater expense or less density to maintain historic sites will not be considered as a justification for material changes or alterations to historic sites and structures. Thus, without Appellant providing further justification beyond financial or building density concerns, as determined by the trial court, Appellee did not commit an error of law or abuse its discretion by denying Appellant's Sketch Plan under Section 135-24(D)(3) of the SALDO.

**B. Section 155-87.20.C(8) of the Zoning Code**

Because we affirm the trial court on the basis that Appellee did not commit an error of law or abuse its discretion by denying Appellant's Sketch Plan under Section 135-24(D)(3) of the SALDO, it is not necessary for us to substantively evaluate Appellee's consideration of the Secretary Standards to determine if it committed an error of law or abused its discretion by also denying the Sketch Plan for noncompliance with Section 155-87.20.C(8) of the Zoning Code. However, on appeal, Appellant raises procedural questions regarding the HARB, namely suggesting that the HARB has inappropriately triggered the need for zoning relief. While Appellant is free to pursue zoning relief, we emphasize that this process remains separate from the type of evaluation provided by the HARB.

Section 155-87.20.C(8) of the Zoning Code states, in relevant part, "[a] recommendation from the Lower Merion Township [HARB] or the Historical

12

Commission must be obtained as required by Chapter 88" when pursuing the "rehabilitation, alteration, or enlargement of any Class I or Class II Historic Resource in the Ardmore Historic District." Zoning Code § 155-87.20.C(8). In its brief, Appellant notes that the provision simply requires a "recommendation" from the HARB as opposed to a favorable recommendation. Thus, in the instant case, Appellant argues that even though it did not receive a favorable recommendation from the HARB, it still satisfied Section of the Zoning Code 155-87.20.C(8) by engaging in the recommendation process. In Appellant's view, to require an applicant to receive a favorable recommendation would result in a misplaced necessity on the part of an unfavorably recommended party to pursue zoning relief in the form of a variance, thus allowing for the HARB to inappropriately administer the municipality's Zoning Code in violation of 53 P.S. § 10614, Section 614 of the Pennsylvania Municipalities Planning Code (MPC).[9]

However, the scenario proposed by Appellant does not properly describe the events of the instant case. While the HARB recommended denial of Appellant's Sketch Plan for failure to comply with the Secretary Standards, this unfavorable denial is not what prompted Appellee to subsequently deny Appellant's Sketch Plan. Instead, Appellee denied the Sketch Plan for Appellant's noncompliance with the Secretary Standards in addition to its failure to provide adequate justification under Section 135-24(D)(3) of the SALDO, as previously discussed. Although Appellee consulted the findings of the HARB report, it did so for the HARB's specialized knowledge in the area of historic preservation, not as an adjudicative body. *See supra* note 7. Thus, Appellant's allegations of inappropriate administration of the municipality's Zoning Code are misplaced.

---

[9]Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

Ultimately, Appellee came to the same conclusion as the HARB, namely that Appellant's Sketch Plan violated four of the Secretary Standards. As a result, Appellee found that Appellant violated Section 155-87.20.C(8) of the Zoning Code, which requires that the "rehabilitation, alteration, or enlargement of any Class I or Class II Historic Resource in the Ardmore Historic District and identified on the Historic Resource Inventory appended to the Lower Merion Township Code as Chapter A180 and located in the MUST," as is the case with the Subject Property, "is subject to the regulations in the current version of the [Secretary Standards]." Zoning Code § 155-87.20.C(8). While Appellant argues that the Secretary Standards are regulatory in nature and non-binding, the Secretary Standards have been explicitly incorporated into the municipality's Zoning Code. *But cf. Lesser v. City of Cape May,* 110 F. Supp. 2d 303 (D.N.J. 2000), *aff'd*, 78 F. App'x 208 (3d Cir. 2003) (holding that the Secretary Standards were "non-binding guidelines" and the City of Cape May was not required to consider them when they were not incorporated, as in the instant case, into the zoning ordinance itself).

Thus, because the Secretary Standards are incorporated into the Zoning Code, Appellee did not commit an error of law or abuse its discretion by considering the Secretary Standards as required by Section 155-87.20(C)(8) of the Zoning Code. As previously discussed, Appellee also did not commit an error of law or abuse its discretion by denying Appellant's Sketch Plan for violating Section 135-24(D)(3) of the SALDO. Therefore, we determine that Appellee properly denied Appellant's Sketch Plan on the basis of noncompliance with its SALDO and Zoning Code.

14

### III. Conclusion

Discerning no error below, we affirm the Order of the trial court.

_____
J. ANDREW CROMPTON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

### IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Freedom Ardmore LP,          :
               Appellant   :
                       :
          v.           : No. 167 C.D. 2021
                       :
Lower Merion Township Board  :
of Commissioners         :

## O R D E R

**AND NOW**, this 16th day of December 2021, we **AFFIRM** the February 2, 2021 Order of the Court of Common Pleas of Montgomery County affirming the Lower Merion Township Board of Commissioners' denial of Freedom Ardmore LP's mandatory sketch plan.

_____
J. ANDREW CROMPTON, Judge